[No. 27636. Department Two. October 17, 1939.]

CLARA VOGT, *Appellant*, v. WHITNEY CURTIS *et al.*, *Respondents.*[1]

*Poe, Falknor, Emory & Howe,* for appellant.

*Jeffrey Heiman,* for respondents.

BEALS, J.—Plaintiff sued the defendants, asking for judgment in a considerable sum on account of an alleged appropriation of plaintiff's property by defendants. By their answer, defendants denied the material allegations of plaintiff's complaint and pleaded an affirmative defense, which plaintiff denied by reply. The

[1]Reported in 94 P. (2d) 761.

action was tried to a jury, which returned a verdict in plaintiff's favor in the sum of $3,550.

Defendants moved for a new trial, basing their motion upon all the statutory grounds. In support of their motion, as based upon misconduct of the jury, defendants submitted the affidavits of several jurors.

It appears from the record that the case was submitted to the jury at one o'clock in the afternoon, and that the jury considered its verdict until approximately half after eleven o'clock that evening, prior to which time the vote of the jury had been eight in favor of the plaintiff and four in favor of the defendants. Shortly before eleven-thirty o'clock, the vote changed to nine for the plaintiff and three for the defendants. Not long after the vote last mentioned, the court called in the jury to ascertain the prospects of a verdict being returned. In response to the court's question, the foreman stated that during the afternoon the vote had stood eight to four in favor of plaintiff, but that on the last ballot it had stood nine to three. The court then told the jury that an additional fifteen minutes would be allowed them for deliberation, and the jury again retired. A few minutes after the expiration of the fifteen minute period suggested by the court, the jury returned a verdict in favor of plaintiff, a poll of the jury disclosing that ten jurors had voted in favor of this verdict. On the poll, each juror stated that the verdict was the verdict of the jury, ten of them stating that the verdict was their verdict, the other two that it was not their verdict.

The trial court denied defendants' motion for a new trial upon all grounds urged save that of misconduct of the jury, and signed an order granting the new trial solely on that ground. From this order, plaintiff has appealed, assigning error upon the entry of the order.

From the affidavits of the jurors filed by the respec-

tive parties in connection with respondents' motion for a new trial, it appears that, on the last ballot of the jury prior to eleven-thirty o'clock, three of the jurors, Gus L. Hensel, Howard B. Stephens, and Mayme C. Schram, voted in favor of a verdict for the defendants, with the result that the vote stood nine to three in favor of appellant; that it was suggested that one of these three jurors change his vote and vote in favor of appellant, which change would result in a verdict; and that the three jurors agreed among themselves that one of them would so change his vote. It does not appear that all or any of these jurors had become convinced that a verdict in favor of appellant should be returned upon the facts and the law, but they did agree that one of them would vote in appellant's favor.

From the affidavits, it further appears that, in accordance with this agreement, the three jurors, using an ordinary deck of playing cards, cut the cards to determine which juror should vote in appellant's favor; that juror Stephens "lost," and in accordance with the fall of the cards, on the next ballot changed his vote from "for the defendants" to "for the plaintiff;" that, as the result of the change of juror Stephens' vote, ten jurors voted in favor of appellant, and a verdict was returned in her favor in the amount above indicated.

Juror Schram filed her affidavit stating these facts. Another juror, Lillie M. Keltner, who had voted in appellant's favor prior to the change, made affidavit to practically the same facts, as being within her knowledge. Two other jurors made affidavit to the effect that cards were cut by the three jurors referred to in juror Schram's affidavit, and other jurors filed affidavits, some of them to the effect that, in the opinion of affiants, no action on the part of jurors Schram, Stephens, and Hensel improperly influenced or af-

fected the verdict. Some of these affidavits were filed by respondents and others by appellant.

Careful reading of the affidavits clearly convinces us that the three jurors did, as stated in juror Schram's affidavit, agree that one of them would change his vote from in favor of respondents to in favor of appellant, and that cards were cut to determine which juror would make the change.

Appellant argues that, when the three jurors agreed that one of them would change his vote, a verdict in appellant's favor became assured, and that the subsequent use of cards to determine which juror would change his vote was an immaterial circumstance and did not justify the trial court in granting respondents' motion for a new trial upon the ground of misconduct of the jury.

■ Rem. Rev. Stat. (Sup.), § 399 [P. C. § 8225], states the grounds for granting a new trial, providing that the verdict may be vacated and a new trial granted on motion of the party aggrieved for any one of eight enumerated causes affecting the substantial rights of the moving party. Paragraph 2 of the section, defining one of the causes for the granting of a new trial, reads as follows:

"Misconduct of prevailing party or jury; and whenever any one or more of the jurors shall have been induced to assent to any general or special verdict to a finding on any question or questions submitted to the jury by the court, other and different from his own conclusions, and arrived at by a resort to the determination of chance or lot, such misconduct may be proved by the affidavits of one or more of the jurors." Laws of 1933, p. 481, § 1.

From the record, it appears beyond question that juror Stephens was induced, by "a resort to determination of chance or lot," to assent to a verdict against which he had voted for many hours.

The trial judge filed a memorandum opinion, which is in the record, from which it appears that the court was convinced that the three jurors named had been guilty of misconduct of such a nature as to warrant the court in granting a new trial. With this view of the situation, we are in hearty accord.

Appellant cites Rem. Rev. Stat., § 359 [P. C. § 8525], which reads as follows:

"When the verdict is returned into court either party may poll the jury, and if ten of the jurors answer that it is the verdict said verdict shall stand. In case ten of the jurors do not answer in the affirmative the jury shall be returned to the jury-room for further deliberation;"

relying upon that portion of the section which provides that "if ten of the jurors answer . . . said verdict shall stand." This section refers to the matter of polling the jury and the receipt of the verdict. The effect to be given to the section in case a juror should endeavor to impeach his own answer to the poll need not here be considered, as juror Stephens neither made affidavit as to what happened nor made any statement whatsoever in connection with the proceedings leading up to the granting of the new trial. The section cannot be construed to mean that the verdict may not be subsequently set aside, as provided by § 399, *supra.*

Appellant also argues that, because juror Stephens, who it is alleged changed his vote pursuant to the fall of the cards, filed no affidavit stating his recollection of the events, the other affidavits filed do not justify the order appealed from. It is not necessary to draw any inference one way or another from the fact that no affidavit on the part of juror Stephens was filed. The picture is complete without any statement from him.

Appellant cites the opinion of this court in the case

of *State v. Millroy,* 103 Wash. 193, 174 Pac. 10. The defendant was convicted of a crime and moved for a new trial, the trial court denying the motion and entering judgment and sentence. In the course of the opinion, this court used the following language:

"It is next argued that the court erred in receiving the verdict of the jury. When the verdict was returned, the jury was polled. In answer to a question asked of each of the jurors whether the verdict was their verdict, one of the jurors answered: 'Either that, or a hung jury.' When admonished by the court that she should answer directly 'Yes' or 'No,' the juror, in answer to the question: 'Is this your verdict and the verdict of the jury?' said 'Yes.' The verdict was thereupon received. The answer of the juror to the question of the court was conclusive, and the juror cannot now be heard to say that she did not agree to the verdict."

It appears that the juror referred to in the opinion, when admonished by the court that she should answer the question directly, stated that the verdict was her verdict and the verdict of the jury. In view of her positive answer, her preliminary remark was unimportant. It was properly held that her answer was conclusive upon her, and that she could not thereafter impeach her solemn statement made upon the poll of the jury.

In the case cited, it was also contended that a new trial should have been granted because of misconduct of the jury, in that one of the jurors, while considering the verdict, had cast a lot to determine which way she should vote. It does not appear that any other juror knew of this action at the time, or that the juror changed her opinion or her vote as the result of what she had done, or that the verdict to which she assented was in fact not her verdict. Referring to this phase of the case, this court said:

"Whatever the fact may be, it is plain that the verdict of a jury cannot be impeached in this way. After a juror has returned a verdict, he cannot be heard to impeach the verdict because some trifling circumstance like this may have controlled his vote."

The case is not controlling here. If verdicts could be overturned by subsequent statements on the part of a juror who, after stating on the poll that the verdict was his, later sought to explain some of the mental processes by which he reached his conclusion, there would be little stability in verdicts. It did not appear that the juror had agreed with anyone else that her vote would be controlled by the casting of a lot, and certainly her idle and foolish act could nowise control her own mind in finally reaching a conclusion concerning the issues upon which she was to pass.

The statute here in question is clear and definite, and lays down a very salutary rule. The affidavits filed, in which several of the jurors stated events which happened in the jury room during the jury's deliberations, clearly show that, as the result of an agreement between three jurors, one of the three changed his vote as the result of the chance fall of a card. The court in its memorandum opinion properly characterized such proceedings, saying that jurors who show such a lack of appreciation of their duties and responsibilities are not fitted for the task.

The trial court was well within its sound discretion in granting respondents' motion for a new trial, and the order appealed from is affirmed.

BLAKE, C. J., STEINERT, GERAGHTY, and JEFFERS, JJ., concur.