[Crim. No. 6893. Second Dist., Div. Two. Apr. 25, 1960.]

THE PEOPLE, Respondent, v. JUAN M. SERRANO et al., Defendants; JESUS SOLOMAN SERRANO, Appellant.

Robert A. Ortiz for Appellant.

Stanley Mosk, Attorney General, S. Clark Moore, Deputy Attorney General, for Respondent.

FOX, P. J.—The defendants, Juan and Jesus Serrano, were convicted on three counts of selling heroin in violation of section 11500 of the Health and Safety Code. Defendant Jesus made a motion for a new trial on counts 1 and 2. His motion was denied. He has appealed from the judgment and from the order denying his motion.

In seeking a reversal, Jesus contends (1) that the officers entrapped him; and (2) that there was insufficient corroboration of the testimony of his asserted accomplice, Juan.

The evidence reveals that in April, 1959, Manuel R. Flores was employed as a narcotics inspector for the State. He contacted Juan in the afternoon of April 10th at 613 So. Ditman Street, in Los Angeles. Flores was in plain clothes. Upon getting acquainted with Juan, they visited for about an hour on the front porch at Juan's invitation. Flores represented that he had just been released from the penitentiary. They discussed, among other things, Flores' supposed criminal record. Juan asked to see some identification, whereupon Flores showed him his driver's license and a draft card. Juan asked him how much money he had, to which Flores replied that he had $200 with him. When Juan asked what he wanted, Flores told him that before he left the penitentiary another inmate had "told me to look you up," that "[you] would help me." Juan stated that he understood what Flores wanted but that he was not a peddler; but added that he knew a friend who was, and that he would call his friend and see whether he could help him. They went into the house, where

Juan made a telephone call. Flores heard Juan say, "Do you have any stuff with you." and then later say, "$200.00." Thereupon Juan stated that they would be there in about 10 minutes. Juan then told Flores that his friend had heroin to sell. Whereupon Flores said to Juan, "I don't want you to do this just as a favor. If you are not a peddler, I don't want you to sell me anything because if you get caught this is a pretty serious offense . . . " Juan replied: "Well, you don't have to worry about that. I might be just as big a peddler as you are or probably bigger." The two men entered Juan's automobile and drove to the vicinity of 3418 East Sixth Street. While en route Flores inquired whether he was getting close to one-quarter of an ounce. Juan stated that he did not understand that kind of weight, but did tell him that he was getting three and a half spoons and that he should be able to get from 32 to 34 capsules out of each spoon. When they stopped, Juan stated that he was going to pick up the stuff and that he would be back in a few minutes. Upon his return after a very brief absence he informed Flores that he had the stuff with him. They drove to the vicinity of Whittier Boulevard and Chicago Street where Juan parked behind a service station and asked for the money. Flores gave him $200 and received a package in return, which proved to be heroin. Juan inquired when Flores would return, and was told that he would be back next Tuesday, Wednesday, or for sure Friday.

On Tuesday, April 14th, Flores returned to the Ditman Street address, arriving late in the afternoon. He met Juan in front of the house and told him that he wanted to purchase $400 worth of heroin. Juan stated that he would have to make a telephone call, which he did. He emerged from the house a few minutes later and informed Flores that he was unable to reach his friend. During the course of the conversation, appellant arrived at the house driving a yellow and white 1958 Chevrolet coupé. He parked and went into the house but stayed only a few minutes and then drove away. Before Flores left, he and Juan agreed that he would return two days later, around 3 o'clock in the afternoon. Flores returned as per appointment on April 16th. He met Juan in front of the house and asked him whether he was ready to deal. Juan replied in the affirmative but said he would have to make a telephone call. After making the call, he invited Flores to join him in a trip in his car. They drove east on Fifth Street and parked in front of Number 3871. Juan informed Flores that he was "going out to the house to pick

up the stuff and would be back later.'' When Juan returned he stated that he had the stuff with him. Flores then gave Juan $400 in return for a package that contained heroin. Before separating, Flores and Juan agreed that Flores would return around 10 o'clock on Saturday morning, the 18th. When Flores returned Saturday morning he advised Juan that he had the money and was ready to deal. Juan asked whether he had $500. Flores replied that he only had $200. Whereupon Juan went into the house and made a telephone call, during which he stated, ''Only bring half.'' Juan then told Flores that they were to wait there, as the stuff was going to be delivered by the same man who had come to the house on the evening of the 14th. Approximately ten minutes later appellant arrived driving the same yellow and white Chevrolet that he was driving on the evening of the 14th. Juan introduced Flores to appellant, referring to him as ''Jesus.'' Appellant asked Flores to get into the car. Juan joined them, occupying the back seat. They drove south about a block and made a right turn. As appellant made this turn, Flores asked him if he had the stuff with him. Appellant replied in the affirmative and reached down and produced a rubber container from his right shoe. Flores put his hand close to appellant's and appellant handed him the container. Flores asked appellant to stop the car because he had the money in his shoes. As appellant stopped the car, Flores took $30 out of his pocket and gave it to Juan. He then identified himself and placed them under arrest. Flores and another inspector interrogated appellant, who first claimed that he did not know what was inside the rubber container; that he had simply received a telephone call from Juan asking him to go to 3871 East 5th Street and pick up a package and bring it over to the house. Upon further interrogation appellant admitted that he knew the package contained heroin and that he had obtained this contraband from another person two or three weeks previously. Juan then stated that appellant was the owner of the narcotics and that he was just helping him to sell them. He stated that he was making from $30 to $50 for each transaction. The inspectors requested appellant to point out the house where he had picked up the narcotics that morning. He took them to a vacant house located at 3871 East 5th Street, which they entered. Appellant showed them a drawer in a piece of furniture in the living room from which he had picked up the contraband.

At the trial Juan testified that the contraband sold Flores on the 10th and 16th had been provided by appellant; that he received the heroin involved in the transaction on the 10th from appellant personally; that the heroin involved in the transaction of the 16th was picked up by him at the vacant house at 3871 East 5th Street where it had previously been left by appellant; and that he turned over the money from these two transactions to appellant.

By way of defense, appellant denied having any connection with the first and second sales, and claimed that he did not know what the contents of the package were that he picked up on the 18th pursuant to Juan's request and which resulted in his arrest. Appellant was employed by the Flintkote Company. The timecards of the company indicated that on April 10th he worked from 11 p.m. to 11 a.m. the next morning, and that on April 16th he worked from 3 p.m. to 11 o'clock that night. He also produced two witnesses who testified that his reputation for truth and honesty in the community was excellent.

■■ The availability of the defense of entrapment "depends upon whether the intent to commit the crime originated in the mind of defendant or in the mind of the entrapping officer." (*People* v. *Benford,* 53 Cal.2d 1, 10 [345 P.2d 928].) ■■ The court further stated that "where a defendant has a preexisting criminal intent, the fact that when solicited by a decoy he commits a crime does not show entrapment. (Citations.)"

■ Applying these principles to the factual situation at hand, we conclude that the trial court could properly find that appellant was not entrapped for it could reasonably come to the conclusion that the intent to commit the crime here charged originated in the mind of Juan. In this connection it is to be noted that Juan first brought up the subject of narcotics and asked Flores how much money he had. Although he asserted that he was not a peddler, he volunteered to call a friend in order to get a supply for Flores. He purported to do this on the basis of simply doing a favor for Flores, whom he had met only that afternoon. Flores, however, protested that if he were not a peddler he did not want him to become involved. Juan responded to this by indicating that perhaps he was as big or even a bigger peddler than Flores. It is also apparent from the foregoing that Flores merely furnished Juan an opportunity to make a sale. This does not constitute entrapment. (*People* v. *Ballard,* 145 Cal.App.2d 94, 100 [302

P.2d 89]; *People* v. *Lindsey,* 91 Cal.App.2d 914, 917 [205 P.2d 1114].)

Relying on section 1111* of the Penal Code, appellant argues that his conviction rests on the uncorroborated testimony of Juan, who was an accomplice. ■■ The applicable principles of this aspect of the case are stated in *People* v. *Lyons,* 50 Cal.2d 245 [324 P.2d 556]. At page 257 the court said: "The evidence need not corroborate the accomplice as to every fact to which he testifies but is sufficient if it does not require interpretation and direction from the testimony of the accomplice yet tends to connect the defendant with the commission of the offense in such a way as reasonably may satisfy a jury that the accomplice is telling the truth; it must tend to implicate the defendant and therefore must relate to some act or fact which is an element of the crime but it is not necessary that the corroborative evidence be sufficient in itself to establish every element of the offense charged. (Citations.)"

■■ There was testimony that after returning from 3871 East 5th Street to the State Building, Jesus was asked where he had obtained the heroin for Juan which the latter had delivered to Flores on the 10th and 16th of April. Jesus stated that someone else had left it for him. In this conversation Jesus admitted he had been involved in supplying the heroin in question on these two dates. Juan told the officers in Jesus' presence that Jesus was the owner of the narcotics and that he, Juan, was just helping him to sell them. Jesus remained silent when Juan made these statements to the officers. It is thus apparent that there was sufficient evidence and ample corroboration on all counts. Flores testified that he purchased heroin on three separate dates. Juan said that he received heroin from Jesus on two of these dates. The officer testified that Jesus himself gave him the heroin on the third occasion. ■■ In addition to appellant's admissions we have the fact that he was present and had the contraband in his possession, which he produced upon the inquiry of Flores, at the time the final sale was made. This would be sufficient to tie Jesus in with the conspiracy to sell heroin that Juan related on the witness stand. ■■ Once a conspiracy has

---

*Penal Code, § 1111, reads as follows: "A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

been established, only slight evidence is needed to connect the appellant with the conspiracy. (*Nye & Nissen* v. *United States,* 168 F.2d 846, 852.) The corroborative evidence, sufficient to satisfy the requirements of Penal Code, section 1111, "need not be strong, or sufficient of itself to establish guilt." (*People* v. *Lopez,* 87 Cal.App.2d 544, 550 [197 P.2d 196]; *People* v. *Negra,* 208 Cal. 64, 69 [280 P. 354].) The evidence in this case, other than that supplied by appellant's accomplice Juan, clearly tended to connect appellant with the commission of the offenses charged.

The judgment and the order denying appellant's motion for a new trial are affirmed.

Ashburn, J., and Richards, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.