[Crim. No. 7971. Second Dist., Div. One. June 7, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES BURNETT, Defendant and Appellant.

454

David J. Vinje, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and George J. Roth, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Burnett and one Gallegos were charged in an indictment with the sale of heroin in violation of section 11501, Health and Safety Code. Following conviction by a jury, each defendant unsuccessfully moved for a new trial. Burnett alone appeals from the judgment and the order (denying a new trial). He claims entrapment as a matter of law; his other assignment of error relates to the failure of the court to send the jury back for further deliberations after an equivocal answer by one juror to the question, "Is that your verdict?"

The principal witness against appellant was one Franklin, a police officer for the City of Los Angeles. At the time in question, March of 1961, he was working undercover and dressed in civilian clothes. In that capacity he went to a house at 5883 South Broadway, an address located in a high-frequency narcotics area—he had been there on five previous

occasions. Defendant Gallegos was sitting in the front room, and the two men introduced themselves. Stating that his name was Frankie, the officer told Gallegos that his "old lady" was sick and needed some "smack" (a trade word for heroin). Asked by Gallegos how much he needed, the officer replied "An eight-dollar paper." Having also been asked "What's in it for me?" the officer said he would pay him $3.00 to "turn me on"—meaning, in the vernacular of the narcotic traffic, to show him how to get something. During the course of their visit, lasting some 35 minutes, Gallegos showed the officer some old needle marks although, according to Gallegos, he was not "on the needle" at that time.

After Gallegos had finished drinking some whiskey, he and the officer went to a house at 228 East 65th Street in the officer's car. Immediately prior thereto, Gallegos had told the officer that he did not know where he could get heroin, but he would take him to people who did know. He also stated that he (Gallegos) could use some "smack."

Upon arrival at the East 65th Street address, the officer was told by Gallegos to wait; the latter then went to the side of the house and returned 30 minutes later with appellant. According to the officer, he had seen neither Gallegos nor appellant prior to that date.

At appellant's direction, the three proceeded in the officer's car to 132d and Carlton. Appellant left the car and walked south on Carlton; when he returned some 15 minutes later he directed the driver to drive back to East 64th Street. There appellant went to a telephone booth. Returning five minutes later, he told the officer to drive to the 5500 block of Spokane Street. When the car arrived at that block, the officer gave appellant one $10 bill and three $1.00 bills. Appellant then left the car and went to an apartment in the 5500 block. Five minutes later, he returned and told the officer he had the "stuff" (an "eight-dollar paper") and to "get out of there." Upon cross-examination, however, he testified that immediately thereafter appellant made another purchase (a "five-dollar paper")—thus using up the remaining $5.00 which he was free to use as he wished.

The three men then went back to the house on East 65th Street where appellant gave the officer a white paper-wrapped bindle containing heroin. Appellant, according to the officer, said he did not want to "shoot" at his house although he had an injection kit available. He suggested to the officer that they

go to the officer's house, but the latter replied that the presence of a lot of people might make the police suspicious.

Appellant took the stand. Denying that he was a user or seller of narcotics, he admitted that the facts of the several occurrences were "substantially" as stated by the officer. Previously, in response to a question by an investigating officer, he denied ownership of the contraband—explaining that he "just helped the man out." He admitted three prior felony convictions—none, however, involving narcotics.

Appellant's claim of entrapment is without merit. The proper test is "not . . . whether the prosecution has 'overcome the defense of entrapment' [citation] but . . . whether the prosecution evidence as a matter of law shows entrapment." (*People* v. *Benford*, 53 Cal.2d 1, 12 [345 P.2d 928].) The problem of reviewing courts, therefore, is "to examine the evidence on this phase of the case to determine whether it shows entrapment as a matter of law, i.e., whether as a matter of law it shows that the criminal design originated not in the mind of the accused but in the mind of the officer, and that he was induced by the officer to commit a crime which he would not have otherwise committed [citation]." (*People* v. *Sweeney*, 55 Cal.2d 27, 49 [9 Cal.Rptr. 793, 357 P.2d 1049].) A review of the record here shows that there is sufficient evidence to support the jury's implied finding that the criminal intent originated with appellant.

Briefly stated, the situation is that a law enforcement officer was informed by Gallegos that the latter could make arrangements for the officer to meet appellant—"He (Gallegos) didn't know where he could get some (heroin), but he could take me to people who did know. . . ." Upon receiving this information the officer furnished appellant an opportunity to commit the offense charged. "Entrapment is the conception and planning of an offense by an officer and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud of the officer. In other words, persuasion or allurement must be utilized to entrap. . . . In the instant case, it appears that the officers merely employed a stratagem for the purpose of apprehending a person already engaged in criminal activities." (*People* v. *Schwartz*, 109 Cal.App.2d 450, 454 [240 P.2d 1024].) There was evidence that appellant had ready access to the contraband. Not only was he willing and able to make the sale of an "eight-dollar package" on comparatively short notice, but his obvious familiarity with the

narcotics trade also enabled him to purchase a "five-dollar package" immediately thereafter. Appellant's conviction cannot be set aside merely because an enforcement officer became a willing buyer and created the opportunity for appellant to ply his trade. Contrary to appellant's seeming suggestion, the "willing seller" doctrine has not been abandoned in this state; *People* v. *Serrano,* 180 Cal.App.2d 243 [4 Cal.Rptr. 470], upon which appellant mistakenly relies, is not to the contrary.

Appellant details certain evidence from which an inference, different from that reached by the jury, could have been drawn. It is settled, however, that "Entrapment as a matter of law is not established where there is any substantial evidence in the record from which it may be inferred that the criminal intent to commit the particular offense originated in the mind of the accused." (*People* v. *Terry,* 44 Cal.2d 371, 372-373 [282 P.2d 19].)

Noncompliance with section 1163 of the Penal Code, warranting a reversal, is also urged. Section 1163 reads: "When a verdict is rendered, and before it is recorded, the jury may be polled, at the request of either party, in which case they must be severally asked whether it is their verdict, and if anyone answer in the negative, the jury must be sent out for further deliberation." During the polling of the jury the following occurred:

"THE CLERK: As to Burnett, is this your verdict; answer 'Yes' or 'No.'

"THE CLERK: . . .

"MRS. BEATRICE GROLITZER: How do you do that when you are in doubt? I guess you say 'Yes.'

"MR. VINJE: May we have the answer?

"THE COURT: I don't understand what you mean; you guess you say 'Yes'? You mean you don't know whether it is your verdict or not?

"JUROR GROLITZER: Well, it is my verdict.

"THE COURT: That is the question you were asked. Is it your verdict?

"JUROR GROLITZER: Yes."

Citing *People* v. *Brancato,* 83 Cal.App.2d 734 [189 P.2d 504], appellant says that "Upon equivocation, the jury should be sent out for further deliberation." In that case, the only California decision called to our attention, one juror made an equivocal reply and the jury was subsequently sent out twice. The juror's approval of the verdict was finally expressed several times and, therefore, the trial court properly refused

to permit counsel's attempted impeachment of this juror's verdict "as already returned and several times confirmed in open court." (P. 744.) A rather recent Ohio case, *State* v. *Brown* (1953), 168 N.E.2d 419, is also cited. That case holds that where it appears that one juror was desirous of changing her vote or that she still entertained a doubt about the propriety of conviction, the court should have directed the jury to return to the jury room for further deliberation—the failure to do so constituting prejudicial error.

"When a juror dissents the jury may be sent back for further deliberation; but although a juror at first answers evasively or in the negative, if he finally acquiesces in the verdict, it must be sustained." (23A C. J. S., Criminal Law, § 1392(d).) The above statement is supported by well-established authority. We like (and adopt) the reasoning of the Washington Court which refers to an earlier Washington case: "It appears that the juror referred to in the opinion (*State* v. *Millroy,* 103 Wash. 193 [174 P. 10]), when admonished by the court that she should answer the question directly, stated that the verdict was her verdict and the verdict of the jury. In view of her positive answer, her preliminary remark was unimportant. It was properly held that her answer was conclusive upon her, and that she could not thereafter impeach her solemn statement made upon the poll of the jury." (*Vogt* v. *Curtis,* 200 Wash. 692 [94 P.2d 761, 763].) As further observed by the New Jersey Supreme Court, "if it clearly appears that the juror concurs in the verdict any evasive statement or explanation volunteered by him is to be disregarded." (*State* v. *Schmelz,* 267 Pa. 173 [111 A.2d 50, 54].)

At bar, the trial court having determined, and rightly so, that the particular juror in question had concurred in the general verdict, the purpose of the poll (and of the governing statute [Pen. Code, § 1163]) had been fulfilled and there was no need for further deliberations.

The judgment and order are affirmed.

Wood, P. J., and Fourt, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 1, 1962.