[Crim. No. 13525. In Bank. Jan. 27, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS MORAN, Defendant and Appellant.

756

758

**COUNSEL**

James W. Read, Jr., under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Robert T. Jacobs and Howard J. Schwab, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**THE COURT.**—An information charged defendant with selling lysergic acid diethylamine (hereinafter LSD) in violation of Health and Safety Code section 11912. At the trial the court instructed the jury on the lesser included offence of possession of LSD (Health & Saf. Code, § 11910). The jury found defendant guilty of sale and possession of LSD. Defendant waived application for probation, and the court sentenced him to the state prison for the term prescribed by law for the sale and to one year in the county jail for possession. It suspended execution of sentence on the possession conviction pending completion of service of sentence on the sale conviction, after which the suspension would become permanent. Defendant appeals.

During June 1967, Agents David Fuentes and Robert L. Mooney of

the Bureau of Narcotic Enforcement were working in the Orange County area with Robert J. McNerney, a police informant. At 4:35 p.m. on June 13, 1967, the agents received a phone call from McNerney concerning a sale of drugs. The agents went to a shopping center in Capistrano Beach. Shortly after they arrived, McNerney drove up and parked beside Agent Fuentes. Defendant was a passenger in McNerney's car. Agent Mooney was nearby. Agent Fuentes left his car and went over to McNerney. He talked briefly with McNerney and then walked to defendant's side of the car. After a brief conversation, defendant handed 20 tablets to Agent Fuentes, who dropped $80 in defendant's lap. The tablets contained usable amounts of LSD.

Defendant took the stand in his own defense. He did not deny the sale but relied on the defense of entrapment. He testified that at the time of the sale he was 18 years old. He lived with his grandmother in Fontana, where he worked for the telephone company. He had stopped at a cafe in San Clemente while on his way to visit his mother in Carlsbad. Defendant had previously lived in San Clemente where he had gone to high school. McNerney was a friend and classmate who had lived near him in San Clemente. Leaving the cafe, defendant walked over to the pier where he met McNerney about 3 p.m. McNerney asked if defendant knew where he could buy LSD for a friend. McNerney explained that his friend asked him to obtain LSD and that he had been unable to do so. Defendant replied that he had none and did not know where to get any. McNerney said he was upset by not being able to buy any for his friend, who needed the drug badly.

A short time later McNerney returned and asked if defendant was certain he knew of no source of LSD. Defendant admitted having some tablets but said they were not for sale. McNerney then suggested that defendant sell him a few so that his friend would let him alone. McNerney appealed to their friendship, stating that if the roles were reversed he would help defendant. Defendant again refused, saying the tablets were for his own use, and the two parted.

As defendant was walking up the pier, McNerney approached him a third time. McNerney asked how many tablets defendant had, and defendant said 20. McNerney stated that his friend needed only a few and would pay well. When McNerney again appealed to their past friendship and said that he would sell defendant the tablets if their positions were reversed, defendant agreed to sell all 20. McNerney said the friend would pay $80.

The two then drove a short distance in McNerney's car to the location where defendant had hidden the tablets. They picked up the LSD and

then drove to the shopping center where they met Agent Fuentes. After a short conversation with McNerney, Fuentes asked defendant if he had the tablets. Defendant said "Yes," and Fuentes said, "Give them to me." Defendant handed the tablets to Fuentes, who dropped the $80 in his lap.

Fuentes testified that defendant said he had 20 tablets and wanted $80 for them and that defendant was not hesitant in making the sale. Defendant testified that he knew it was a crime to possess LSD and that he had the tablets for two months before the sale.

Defendant contends that the evidence establishes entrapment as a matter of law. The jury, however, was not required to believe his testimony that he was entrapped (*People* v. *Benford* (1959) 53 Cal.2d 1, 5 [345 P.2d 928]), and the prosecution evidence does not establish entrapment as a matter of law. ■ "Entrapment as a matter of law is not established where there is any substantial evidence in the record from which it may be inferred that the criminal intent to commit the particular offense originated in the mind of the accused." (*People* v. *Terry* (1955) 44 Cal.2d 371, 372-373 [282 P.2d 19].) ■ From the evidence that defendant sold 20 tablets containing LSD to Fuentes and that defendant had the tablets in his possession for two months the jury could infer that the intention to sell the tablets originated in defendant's mind (see *People* v. *Diaz* (1962) 206 Cal.App.2d 651, 671 [24 Cal.Rptr. 367]; disapproved on other grounds in *People* v. *Perez* (1965) 62 Cal.2d 769, 776, fn. 2 [44 Cal.Rptr. 326, 401 P.2d 934]; 19 Hastings L.J. 825, 844). Moreover, defendant's failure to call McNerney as a witness supports an inference that his testimony would not be favorable to defendant. (Evid. Code, § 412.)

Defendant also contends that the recent enactment of the Evidence Code overturns the holding in *People* v. *Valverde* (1966) 246 Cal.App.2d 318 [54 Cal.Rptr. 528], that the defendant has the burden of proving entrapment by a preponderance of the evidence. ■ Evidence Code section 501[1] subjects statutory burdens of proof in criminal cases to Penal Code section 1096,[2] which requires the prosecution to establish the defendant's guilt beyond a reasonable doubt. The defendant's burden to prove entrapment, however, is not subject to Penal Code section 1096, for the defense of entrapment in California is not based on the defendant's innocence. The courts have created the defense as a control on illegal police conduct "out of regard for [the court's] own dignity, and in the exercise of its

---

[1]"Insofar as any statute, except Section 522, assigns the burden of proof in a criminal action, such statute is subject to Penal Code Section 1096."

[2]"A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal, but the effect of this presumption is only to place upon the state the burden of proving him guilty beyond a reasonable doubt."

power and the performance of its duty to formulate and apply proper standards for judicial enforcement of the criminal law." (*People* v. *Benford, supra,* 53 Cal.2d 1, 9.) Moreover, this court acknowledged the continuing validity of the rule of the *Valverde* case in *In re Dennis M.* (1969) 70 Cal.2d 444, 457, fn. 10 [75 Cal.Rptr. 1, 450 P.2d 296].[3]

Defendant's contention that the trial court did not instruct the jury that a third party informer is to be treated as an agent of law enforcement officers for purposes of entrapment is likewise without merit. ■ The trial court properly instructed the jury that if the crime was suggested by another person, whether or not a law enforcement officer, for the purpose of entrapment, the defendant is not criminally liable.[4]

Defendant contends that the prosecution's failure to call McNerney as a witness denied him his right to confront his accusers. ■ The People are not required to call any particular witness so long as the material evidence relating to the charge against defendant is produced in a manner according him a fair trial. (*People* v. *Kiihoa* (1960) 53 Cal.2d 748, 752 [3 Cal.Rptr. 1, 349 P.2d 673].) ■ The failure of the People to call an informer may manifest an intention to suppress material evidence going to defendant's guilt or innocence. To prevent such an abuse the People, when asked on cross-examination, must disclose the identity of the informer or incur a dismissal. (*People* v. *Perez* (1965) 62 Cal.2d 769, 773 [44 Cal.Rptr. 326, 401 P.2d 934].) ■ In the present case, however, defendant knew the informer, who was a participant in the sale. Defendant was present throughout the series of events involving the informer, knew what evidence would be available through the informer's testimony, and

---

[3]The Model Penal Code, section 2.13(2) (Proposed Official Draft 1962) also places the burden on defendant to prove entrapment by a preponderance of the evidence.

[4]CALJIC No. 851 (Revised). "The law does not tolerate *one person,* particularly a law enforcement officer, generating in the mind of another person who is innocent of any criminal purpose, the original intent to commit a crime thus inducing such person to commit a crime which he would not have committed or even contemplated but for such inducement.

"If the intent to commit the crime did not originate with the defendant and he was not carrying out his own criminal purpose, but the crime was suggested *by another person* for the purpose of entrapping and causing the arrest of the defendant, then the defendant is not criminally liable for the acts so committed." (Italics added.)

CALJIC No. 852 (Revised). "When law-enforcement officers are informed that a person intends to commit a crime, the law permits the officers to afford opportunity for the commission of the offense, and to lend the apparent cooperation of themselves or of *a third person* for the purpose of detecting the offender. When officers do this, if the suspect himself, originally and independently of the officers, intends to commit the acts constituting a crime, and if he does acts necessary to constitute the crime, he is guilty of the crime committed. He has no defense in the fact that an officer or *other person* engaged in detecting crime was present and provided the opportunity, or aided or encouraged the commission of the offense." (Italics added.)

could have called him as a witness. It is manifest that the People's failure to call McNerney cannot be characterized as a suppression of evidence.

■ Defendant contends that the prosecuting attorney committed prejudicial misconduct by referring to marijuana during the cross-examination of defendant. From the context of the questions, however, it is apparent that these references were merely slips of the tongue and that the prosecuting attorney meant to ask about LSD. A prompt objection would have dispelled any possible confusion. No miscarriage of justice appears. (See *People* v. *Watson* (1956) 46 Cal.2d 818, 835 [299 P.2d 243].)

Defendant also contends that the trial court erred in admitting testimony that McNerney was perhaps a perjurer. Defendant does not explain how this testimony could have prejudiced him. ■ Furthermore, the testimony was given by a defense witness on direct examination. Since defendant is responsible for the introduction of the evidence, he cannot complain on appeal that its admission was error. (See Witkin, Cal. Evidence (2d ed. 1966) § 1286, p. 1189.)

■ Defendant contends that the trial court erred in failing to exercise its discretion to consider whether defendant should be referred to the California Youth Authority. Defendant waived application for probation and did not request referral to the Youth Authority. In such cases, however, a trial court must on its own motion consider the referral of eligible defendants. (*People* v. *Sparks* (1968) 262 Cal.App.2d 597, 600 [68 Cal. Rptr. 909].) On this matter the record is silent.

It is presumed that official duty has been regularly performed. (Evid. Code, § 664.) ■ The record shows that defendant was 18 years old and shortly before trial had pleaded guilty to possession of marijuana. (Health & Saf. Code, § 11530.) Although no probation report was prepared, the trial court had sufficient information upon which to exercise its discretion. In the absence of any showing to the contrary, we must presume that it did so. (*People* v. *Sparks, supra,* 262 Cal.App.2d 597, 600-601.)

The trial court instructed the jury on the lesser included offense of possession of LSD. The last paragraph of its instruction read: "If the evidence is sufficient to support a finding of guilt of both the offense charged and a lesser included offense, but you entertain a reasonable doubt as to which offense the defendant is guilty, it is your duty to find him guilty only of the lesser offense." (CALJIC No. 115 (Revised).) The jury was not instructed that it should return only one verdict, and it found defendant guilty of both sale and possession of LSD.

■ Conviction of a lesser included offense is an implied acquittal of the offense charged when the jury returns a verdict of guilty of only the lesser included offense. (*Gomez* v. *Superior Court* (1958) 50 Cal.2d 640, 645 [328 P.2d 976].) ■ When the jury expressly finds defendant guilty of both the greater and lesser offense, however, there is no implied acquittal of the greater offense. If the evidence supports the verdict as to a greater offense, the conviction of that offense is controlling, and the conviction of the lesser offense must be reversed. (*People* v. *Tideman* (1962) 57 Cal.2d 574, 581-582 [21 Cal.Rptr. 207, 370 P.2d 1007]; *People* v. *Greer* (1947) 30 Cal.2d 589, 599 [184 P.2d 512].)

The judgment of conviction of violation of Health and Safety Code section 11910 is reversed. The judgment of conviction of violation of Health and Safety Code section 11912 is affirmed.

**TRAYNOR, C. J.**—I dissent.

The trial court instructed the jury that "[i]f the intent to commit the crime did not originate with the defendant and he was not carrying out his own criminal purpose, but the crime was suggested by another person for the purpose of entrapping and causing the arrest of the defendant, then the defendant is not criminally liable for the acts so committed." (CALJIC No. 851 (Revised).) The jury rejected the defense and found defendant guilty.

It is my opinion that the cases on which this instruction was based should be overruled (see notes 1 and 2, *infra*) and that the issue of entrapment should be determined by the trial court.

The theory of the defense of entrapment as it bears on the elements of the defense and the issue whether it presents a question for the court or jury sharply divided the United States Supreme Court on the two occasions it confronted these problems. The court held that entrapment goes to the guilt or innocence of the accused. According to its test, if the intent to commit the offense originated in the accused's mind, entrapment cannot be established; if the intent originated in the mind of a law enforcement officer the defense is established. The issue is for the jury to decide. (*Sherman* v. *United States* (1958) 356 U.S. 369 [2 L.Ed.2d 848, 78 S.Ct. 819]; *Sorrells* v. *United States* (1932) 287 U.S. 435 [77 L.Ed. 413, 53 S.Ct. 210, 86 A.L.R. 249].) A minority of the Justices would permit the defense, not because the accused is innocent, but to protect the purity of government processes and to deter impermissible police conduct. In their view these policies, basic to the administration of justice, are for the court, not the jury, to enforce. (*Sherman* v. *United States, supra,* 356 U.S. 369, 378 [2 L.Ed.2d 848, 854, 78 S.Ct. 819] (Frankfurter, J. concurring);

*Sorrells* v. *United States, supra,* 287 U.S. 435, 453 [77 L.Ed. 413, 423, 53 S.Ct. 210, 86 A.L.R. 249] (Roberts, J. concurring).)

In 1959 this court adopted the government policy and police conduct theory of the defense. "[O]ut of regard for its own dignity, and in the exercise of its power and the performance of its duty to formulate and apply proper standards for judicial enforcement of the criminal law, the court refuses to enable officers of the law to consummate illegal or unjust schemes designed to foster rather than prevent and detect crime." (*People* v. *Benford* (1959) 53 Cal.2d 1, 9 [345 P.2d 928].) The court acknowleged that in the past California courts placed at least as much emphasis on the susceptibility of the defendant as on the propriety of the police methods (*People* v. *Benford, supra,* 53 Cal.2d 1, 9-10), but stated that now the court was primarily concerned with police conduct. (*People* v. *Benford, supra,* 53 Cal.2d 1, 13 ,fn. 5.) Nevertheless, decisions since *Benford* repeatedly have used the origin of intent test for entrapment[1] and have committed the issue to the jury.[2] In so doing they have departed from the

---

[1]*People* v. *Francis* (1969) 71 Cal.2d 66, 78 [75 Cal.Rptr. 199, 450 P.2d 591]; *People* v. *Sweeney* (1960) 55 Cal.2d 27, 49 [9 Cal.Rptr. 793, 357 P.2d 1049]; *People* v. *Tambini* (1969) 275 Cal.App.2d 757, 764 [80 Cal.Rptr. 179]; *People* v. *Chatfield* (1969) 272 Cal.App. 2d 141, 148 [77 Cal.Rptr. 118]; *People* v. *Dickerson* (1969) 270 Cal.App.2d 352, 363 [75 Cal.Rptr. 828]; *People* v. *Glaser* (1968) 265 Cal.App.2d 849, 852 [71 Cal.Rptr. 706]; *People* v. *Sweet* (1967) 257 Cal.App.2d 167, 170 [65 Cal.Rptr. 31]; *People* v. *Barone* (1967) 250 Cal.App.2d 776, 781 [58 Cal. Rptr. 783]; *Los Robles Motor Lodge, Inc.* v. *Department of Alcoholic Beverage Control* (1966) 246 Cal.App.2d 198, 206 [54 Cal.Rptr. 547]; *People* v. *Goree* (1966) 240 Cal.App.2d 304, 311 [49 Cal.Rptr. 392]; *People* v. *Hicks* (1963) 222 Cal.App.2d 265, 270 [35 Cal.Rptr. 149]; *People* v. *Tostado* (1963) 217 Cal.App.2d 713, 719 [32 Cal.Rptr. 178]; *People* v. *Hawkins* (1962) 210 Cal.App.2d 669, 672 [27 Cal. Rptr. 144]; *People* v. *Harris* (1962) 210 Cal.App.2d 613, 616 [26 Cal.Rptr. 850]; *People* v. *Head* (1962) 208 Cal.App.2d 360, 366 [25 Cal.Rptr. 124]; *People* v. *Cline* (1962) 205 Cal.App.2d 309, 311 [22 Cal.Rptr. 916]; *People* v. *Burnett* (1962) 204 Cal.App.2d 453, 456 [22 Cal.Rptr. 320]; *People* v. *Ortiz* (1962) 200 Cal.App.2d 250, 258 [19 Cal.Rptr. 211]; *People* v. *D'Agostino* (1961) 190 Cal.App.2d 447, 463 [11 Cal.Rptr. 847]; *People* v. *Valdez* (1961) 188 Cal.App.2d 750, 759 [10 Cal.Rptr. 664]; *People* v. *Rivers* (1961) 188 Cal.App.2d 189, 192 [10 Cal.Rptr. 309]; *People* v. *Buckman* (1960) 186. Cal.App.2d 38, 51 [8 Cal.Rptr. 765]; *People* v. *Haggard* (1960) 181 Cal.App.2d 38, 44 [4 Cal.Rptr. 898]; *People* v. *Serrano* (1960) 180 Cal. App.2d 243, 248 [4 Cal.Rptr. 470]; see CALJIC No. 851 (Revised).

[2]*People* v. *Mason* (1969) 276 Cal.App.2d 386, 388 [81 Cal.Rptr. 195]; *People* v. *Walters* (1968) 264 Cal.App.2d 834, 845 [70 Cal.Rptr. 766]; *People* v. *Carter* (1967) 251 Cal.App.2d 400, 404 [59 Cal.Rptr. 394]; *People* v. *Hicks* (1963) 222 Cal.App.2d 265, 270 [35 Cal.Rptr. 149]; *People* v. *Hawkins* (1962) 210 Cal.App.2d 669, 672 [27 Cal.Rptr. 144]; *People* v. *Head* (1962) 208 Cal.App.2d 360, 365 [25 Cal.Rptr. 124]; *People* v. *Austin* (1961) 198 Cal.App.2d 186, 189 [17 Cal.Rptr. 782]; *People* v. *D'Agostino* (1961) 190 Cal.App.2d 447, 462 [11 Cal.Rptr. 847].

rationale of the *Benford* case and seriously undermined the deterrent effect of the entrapment defense on impermissible police conduct.

Because the purpose of the defense is to control impermissible police conduct, "it is wholly irrelevant to ask if the 'intention' to commit the crime originated with the defendant or government officers, or if the criminal conduct was the product of 'the creative activity' of law-enforcement officials." (*Sherman* v. *United States, supra*, 356 U.S. 369, 382 [2 L.Ed.2d 848, 856, 78 S.Ct. 819] (Frankfurter, J. concurring); Rotenberg, *The Police Detection Practice of Encouragement* (1963) 49 Va.L.Rev. 871, 892-893.) Instead, the court must concern itself with the activity it would seek to control. It must not lose sight of that purpose by focusing on the character and conduct of the accused. (See Remarks of Professor Paulsen, ALI Proceedings 1959, p. 228.)

Not all police conduct can be condemned, however, merely because it might tempt a person into crime. Criminal activity such as prostitution and traffic in narcotics normally does not bring complaints from its willing "victims." To enforce laws against such activities, an officer often must become a seemingly willing participant in crime. (See Tiffany et al., Detection of Crime (1967) p. 209.) In so doing, however, he may not engage in methods that might induce persons to commit offenses who would not otherwise do so, thereby manufacturing rather than preventing crime.

The line must be drawn between methods likely to persuade those otherwise unwilling to commit an offense from methods likely to persuade only those who are ready to do so. If the purpose of the defense of entrapment is to be achieved, the test must be objective and focus only on the methods used. In the case of traffic in narcotics, law-abiding citizens would not ordinarily be seduced into becoming involved in such traffic by an officer's offer to purchase them. Such an offer, however, is quite likely to lead to a sale when made to one prepared to sell. Accordingly, such an offer without more would not constitute entrapment. If in addition, however, the officer adopts methods of persuasion and inducement that create a substantial risk that a person other than one ready to commit the crime solicited will commit the crime, the defense of entrapment is established. (See Model Pen. Code, § 2.13(1)(b) (Proposed Official Draft 1962).)

The post-*Benford* cases following the rule that the defense of entrapment should be determined by the jury have not discussed the significance of that case to that rule, and neither the pre-*Benford* (see, e.g., *People* v. *Gutierrez* (1954) 128 Cal.App.2d 387, 390 [275 P.2d 65]) nor post-*Benford* cases have given any explanation for the rule.

Under the rationale of the *Benford* case, submission of the issue to the

jury cannot be justified on the ground that it goes to the defendant's guilt or innocence. The crucial issue is whether the court or the jury can best achieve the purpose of the defense: the deterrence of impermissible police conduct. A jury verdict of guilty or not guilty tells the police nothing about the jury's evaluation of the police conduct. A verdict of guilty may mean that the jury did not believe the defendant's testimony that would have established entrapment. It may also mean that the jury did not believe that the conduct created a substantial risk of inducing one not ready to commit the offense into doing so. Since the defendant may assert entrapment and also deny that he committed the crime (*People* v. *Perez* (1965) 62 Cal.2d 769, 775-776 [44 Cal.Rptr. 326, 401 P.2d 934]), a "not guilty" verdict may also shed no light on the jury's assessment of police conduct. Moreover, even when the verdict settles the issue of entrapment in the particular case, it "cannot give significant guidance for official conduct for the future. Only the court, through the gradual evolution of explicit standards in accumulated precedents, can do this with the degree of certainty that wise administration of criminal justice demands." (*Sherman* v. *United States, supra,* 356 U.S. 369, 385 [2 L.Ed.2d 848, 858, 78 S.Ct. 819] (Frankfurter, J. concurring); accord, Model Pen. Code, § 2.13(2) (Proposed Official Draft 1962).) In other areas involving police conduct, we have recognized the paramount importance of committing the assessment of such conduct to the court. Thus, the trial court, subject to appropriate appellate review, determines the admissibility of confessions and other evidence claimed to have been illegally obtained. (*People* v. *Gorg* (1955) 45 Cal.2d 776, 780-781 [291 P.2d 469]; Pen. Code, § 1538.5, ubd. (c); Evid. Code, § 405; see Witkin, Cal. Evidence (2d ed. 1966) § 492, pp 462-463.) It should also determine the issue of entrapment.

Peters, J., and Tobriner, J., concurred.