Filed 8/9/21  P. v. Arellano CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MIGUEL SANDOVAL ARELLANO,<br><br>Defendant and Appellant. | H045762<br>(Santa Clara County<br>Super. Ct. No. C1754248) |

A jury convicted defendant of felony assault, misdemeanor assault, and misdemeanor battery.  Defendant challenges the misdemeanor assault as lesser included and thus duplicative of the felony assault conviction.  He also challenges the denial of his motion under Penal Code section 17, subdivision (b) to reduce the felony assault to a misdemeanor.  We see no abuse of discretion in the trial court declining to reduce the felony assault.  We accept the Attorney General's concession that the conviction for misdemeanor assault is duplicative of the felony assault and must therefore be stricken.  We will modify the judgment to strike the misdemeanor assault and attendant fees, and affirm the judgment as modified.

## I.  BACKGROUND

On Labor Day in 2016, Miguel Sandoval Arellano, along with codefendants Paoolo Rivas and Luis Angel Rivas, beat an acquaintance, leaving him injured and unconscious.  The defendants had consumed alcohol at breakfast, after which they spent several hours drinking with the victim and his coworker at the victim's place of work (a

cabinetry shop). From there, the group went to a restaurant for dinner, where Luis Rivas and the victim argued, and Paoolo Rivas grabbed the victim and "put him on the floor." (The parties dispute who was the aggressor in the restaurant.) The victim was upset. He and his coworker returned to the cabinetry shop, and the defendants followed soon thereafter. At the shop, an argument and a physical struggle over a machete ensued between the victim and Luis Rivas, followed by an assault on the victim. The Rivas brothers beat the victim who was on the ground unarmed, while defendant used the machete to keep two witnesses at bay. The victim's coworker tried unsuccessfully to protect the victim during the assault. The defendants fled by car, and the victim was transported to the hospital in an ambulance. He spent several hours in the emergency room where he underwent a series of x-rays and scans, and received sutures for a head laceration.

The victim testified at trial that the assault was unprovoked. He grabbed a machete from among the shop's tools only after the defendants refused to leave the shop and advanced on him. He set the machete on a worktable when he believed the defendants no longer posed a threat. Defendant then grabbed a pipe (also a shop tool) and started striking him inside the shop, and the assault continued outside the shop.

The defendants all testified that they had acted in self-defense: the victim chased Paoolo Rivas with the machete, brought Paoolo Rivas to his knees and threatened to kill him, and defendant dislodged the machete from the victim's grip using a pipe tool. One of the witnesses testified that defendant knocked the machete to the ground with a metal pipe as Luis Rivas and the victim were struggling for the knife's control. Both witnesses testified that the victim tried to run, but was overtaken and cornered by the defendants, and severely beaten. According to the witnesses, one of the defendants kept them at bay with the machete while the others beat the victim. The victim's coworker did not testify. (According to testimony at the preliminary hearing, the coworker left the country sometime after the incident.)

A jury acquitted each defendant of assault with a deadly weapon other than a firearm (Pen. Code, § 245, subd. (a)(1); count 1) and of battery causing serious bodily injury (*id*., §§ 242, 243, subd. (d); count 3). Each defendant was convicted of felony assault with force likely to create great bodily injury (*id*., § 245, subd. (a)(4); count 2) and of the lesser included offenses of simple assault and simple battery as to count 3. Great bodily injury special allegations were found not true.

Defendant and codefendant Luis Rivas moved to reduce their assault convictions to misdemeanors under Penal Code section 17, subdivision (b). Defendant argued to the trial court that he "fear[ed] for his friend's safety" in an "altercation … with a machete wielding man not very familiar" to him, and he "disarmed the man of the machete and punched him." He argued that he was a successful businessman with no criminal history who cared for his severely disabled brother, financially provided for his mother and girlfriend, was cooperative with law enforcement, and exhibited exemplary behavior during the court proceeding. The prosecutor took issue with defendant's claim of self-defense, noting that defendant and the codefendants chased down the victim down after disarming him, beat the victim until others intervened, and immediately left the scene. She argued that defendant failed to take responsibility for his actions by minimizing his culpability and blaming the confrontation on the victim. In denying the motions, the trial court stated: "[A]s I indicated to you in chambers, and I will indicate again for the record, I think the fact that the victim in this matter was injured relatively severely, had to be taken to the hospital and spent at least two days in the hospital, I don't think this is misdemeanor conduct."

Imposition of sentence was suspended as to both defendant and codefendant Luis Rivas. Both were placed on three years' formal probation and ordered to serve 60 days in custody or on electronic monitoring. (The judgment as to codefendant Paoolo Rivas, who was sentenced at a later date, is not part of the record before us.) All defendants

3

were ordered jointly and severally to pay the victim's emergency room bills totaling $26,739, and $9,000 in other restitution directly to the victim.

## II. DISCUSSION

### A. THE PENAL CODE SECTION 17(B) MOTION

A trial court has discretion to reduce a felony assault to a misdemeanor at the time of sentencing. (Pen. Code, §§ 17, subd. (b)(1), (3); 245, subd. (a)(4).) Factors relevant to the trial court's decision include " 'the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense, [and] his traits of character as evidenced by his behavior and demeanor at the trial.' " (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 978 (*Alvarez*).) Courts may also consider the sentencing objectives set forth in California Rules of Court, rule 4.410. (*Alvarez*, at p. 978.) Those include protecting society, punishing the defendant, deterring crime, encouraging the defendant to lead a law-abiding life, and preventing the defendant from committing new crimes. (Cal. Rules of Court, rule 4.410(a).) The trial court's discretion under Penal Code section 17 is broad, and it will not be disturbed on appeal unless it is clearly shown the decision was irrational or arbitrary. (*Alvarez*, at p. 977.) Absent such a showing, we presume the trial court acted to achieve legitimate sentencing objectives. (*Ibid.*)

Defendant argues that the trial court unduly focused on the victim's injuries, and its ruling was unreasonable in light of the relevant factors supporting reduction. As in the trial court, he argues the circumstances are unusual because the offense "originated with a deadly assault by the *victim*." In his view, the acquittal on count 1 (assault with a deadly weapon) was an implied finding that defendant had initially acted in self-defense or defense of his friend, and he was convicted of assault "only because his group continued to strike [the victim] after he was disarmed." He argues that the victim's "unexpected deadly assault" spiked his fear and adrenaline, the "post-disarming" assault was brief, and his limited participation brought an end to the assault. He contends he is not a danger to society, as reflected in the court's grant of probation, and that his character, lack of

4

criminal record, conduct at trial, work history, and commitment to paying restitution all favor misdemeanor treatment. He also notes the impediment a felony conviction poses to his obtaining a contractor's license (a seven year wait period).

We see no abuse of discretion on this record. The evidence shows a violent, potentially life-threatening beating of an unarmed man not justified by self-defense. One witnesses testified that after the machete was knocked to the ground, one of the defendants held the pipe, another the machete, "then there were three of them against [the victim]," the beating lasted "maybe one minute," and the victim was bleeding a lot and lost consciousnesses. Both witnesses testified that the victim wanted to run but was quickly overtaken and "pulled against [a] van," where he fell to the ground and was hit with fists and kicked, even after his coworker intervened. The witnesses' testimony supports the view that the assault ended when the victim was rendered unconscious, rather than by defendant removing himself and the codefendants from the scene. The evidence also shows that defendant handled the machete in a threatening manner against the witnesses, which enabled the Rivas brothers to accomplish the beating.

The trial court described the length of the victim's hospital stay as "at least two days" and characterized his injuries as "relatively severe[]." Defendant argues those findings are erroneous. Medical records showed the victim was admitted to the emergency room at 9:27 p.m. and discharged the next morning at 4:01 a.m. A forensic nurse who reviewed the medical records testified that the victim suffered from blunt force trauma to the forehead, causing a laceration three centimeters long, five millimeters deep, and requiring eight sutures. She testified that the level of force needed to create the laceration could be enough to cause a head injury or traumatic brain injury. The sentencing court was familiar with the facts, having presided over the trial. The parties had discussed the motion in chambers before it was denied on the record, and neither defendant elected to place on the record any perceived factual misstatements made by the court. Neither the court's comments nor the acquittal on count 1 convince us that the

5

court misunderstood the severity of the victim's injuries or acted in an arbitrary or irrational manner in denying the motion. Regardless of what actually transpired before it was "three against one," the prosecutor asked the jury to assume the defendants disarmed the victim after being threatened with the machete. She made clear that the charged offenses occurred *after* the defendants had control of the machete and the victim was defenseless, and the jury rejected self-defense as a justification for the assault.

Defendant raises for the first time in his reply brief that the reduction of codefendant Luis Rivas's sentence to a misdemeanor shows arbitrariness in the trial court's ruling. Both defendants were sentenced in March 2018, after the trial court denied their motions under Penal Code section 17(b). This court granted codefendant Rivas's motion to stay his appeal to allow him the opportunity to file a new motion in the trial court to reduce his sentence, which the trial court granted in July 2020. That more recent ruling does not reflect on the trial court's discretion when it denied defendant's motion two years earlier, nor does it compel us to remand the matter to the trial court for reconsideration, as defendant now requests.[1]

### B. THE LESSER INCLUDED SIMPLE ASSAULT

The Attorney General concedes that defendant's misdemeanor assault conviction (a lesser included offense in count 3) must be stricken because simple assault is a lesser included offense and thus duplicative of the felony assault conviction in count 2. (*People v. McDaniels* (2008) 159 Cal.App.4th 736, 747.) A defendant cannot be convicted of both a greater offense and a lesser included offense, i.e., one that is necessarily committed whenever the greater offense is committed. (*People v. Montoya* (2004) 33 Cal.4th 1031, 1034.) When a defendant is convicted of both a greater and a

---

[1] Defendant's argument—that in the event we order a sentencing remand and the trial court on remand imposes sentence in count 3 (misdemeanor battery), that sentence must be stayed under Penal Code section 654—is moot in light of our upholding the felony sentence in count 2.

necessarily included offense, the lesser offense must be reversed. (*People v. Moran* (1970) 1 Cal.3d 755, 763.) We will therefore modify the judgment to strike the misdemeanor assault conviction (denoted on the clerk's minutes as count 4) and attendant fees. The court operations assessment (Pen. Code, § 1465.8, subd. (a)(1)) and the court facilities assessment (Gov. Code, § 70373) shall be reduced accordingly. We will affirm the judgment as modified. (*People v. Haskin* (1992) 4 Cal.App.4th 1434, 1441 [appellate court has authority to correct an unauthorized sentence on appeal].)

### III.   DISPOSITION

The judgment is modified to strike defendant's misdemeanor conviction for simple assault, reflected on the clerk's minutes as count 4. The court operations assessment (Pen. Code, § 1465.8, subd. (a)(1)) is reduced from $120 to $80, and the court facilities assessment (Gov. Code, § 70373) is reduced from $90 to $60. As modified, the judgment is affirmed. The superior court clerk is directed to enter a new judgment reflecting these modifications.

7

_____

Grover, J.

**WE CONCUR:**

_____

Greenwood, P. J.

_____

Danner, J.

**H045762 -** *The People v. Arellano*