[No. D005214. Fourth Dist., Div. One. May 23, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES P. CARAPELI, Defendant and Appellant.

[Opinion certified for partial publication.[1]]

[1] Pursuant to California Rules of Court, rules 976.1 and 976(b), this opinion is certified for publication with the exception of section II.

## COUNSEL

David H. Askey, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Maxine Cutler and David A. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WIENER, Acting P. J.**—James Carapeli appeals from the judgment entered on jury verdicts convicting him of assault with intent to commit rape (Pen. Code, § 220),[2] and sexual battery by restraint (§ 243.4, subd. (a)). As set out more fully in our opinion we reject Carapeli's claims of instructional error. We partially agree, however, with his assertion that the court failed to properly exercise its discretion in ruling on his new trial motion. We therefore affirm the judgment of conviction of sexual battery by restraint and reverse the judgment of conviction of assault with intent to commit rape to permit the court to conduct a rehearing of Carapeli's new trial motion as to the latter count.

### FACTUAL AND PROCEDURAL BACKGROUND

Around midnight on April 4, 1986, Carapeli asked Kelly H. for a ride to his car which he said was parked about a half mile away. H. agreed to do so. When H. stopped her car to drop him off, Carapeli said he had too much to drink and requested H. drive him to his home. H. again agreed. She

---

[2] All statutory references are to the Penal Code.

followed Carapeli's verbal directions, finally arriving in a residential area where she stopped the car, told Carapeli she did not know where she was and told him he could walk the rest of the way. Carapeli demanded she take him home and squeezed the back of her neck with his hand. H. followed Carapeli's directions, made another series of turns, reaching an area where there were no houses. H. began to stop the car. She told Carapeli she did not know where she was.

Before the car came to a complete stop, Carapeli crawled on top of her. While H. tried to set the emergency brake, Carapeli tried to kiss her. At the same time he put one hand down her blouse and the other hand up her skirt. H. pushed and bit him. Carapeli nonetheless succeeded in touching her breasts and her vaginal area. H. ran from the car and screamed for help. Carapeli ran after her, caught her, threw her over his shoulder and carried her into the bushes. He threw her down and got on top of her. Again Carapeli put one hand down her blouse and touched her breast. He put his other hand up her skirt and touched her vaginal area. H. was in pain. Her back was pressed into a rock. She asked Carapeli to get off so she could remove the rock. He lifted his upper body as if he were doing a pushup. H. then rolled out from underneath him and ran toward her car. Carapeli ran after her. He attempted to prevent her from getting into the car. H. finally got into the driver seat, but could not close the door. Standing between the door and her seat, Carapeli demanded she take him home. After further scuffling H. was able to close the door and drove away.

El Cajon Police Officer Woodward questioned Carapeli after his arrest. Woodward testified that Carapeli told him that H. offered him a ride home, then stopped the car. They talked and kissed once. H. got out of the car and seemed upset and "freaked out." Carapeli said that he left her and jogged home. Carapeli denied he had attempted to fondle H.'s breasts or touch her vaginal area. Carapeli also denied he had attempted to rape her.

Carapeli did not testify. The defense rested after the prosecution had completed its case. After the jury found him guilty on both counts, Carapeli unsuccessfully moved for a new trial.

## DISCUSSION

### I

Carapeli's appeal focuses primarily on claims of instructional error. We discuss each of these contentions before addressing the determinative question of whether the court erred in denying his motion for a new trial.

A

■ Carapeli first contends the court prejudicially erred by refusing to give CALJIC No. 1.23.1 (1983 New) entitled "Consent"—Defined in Rape . . ." His requested instruction states: "In prosecutions under Penal Code Section __ the word 'consent' means positive cooperation in act or attitude pursuant to an exercise of free will. The person must act freely and voluntarily and have knowledge of the nature of the act or transaction involved."

Carapeli claims this instruction was essential so that each member of the jury would have the same understanding and apply the same definition of the word "consent," a word with legal significance. He says the instruction here was of particular importance because "[i]n our culture 'no' does not always mean 'no,' in regards to sexual affairs between men and women, sometimes [no] means 'maybe,' 'later,' 'not now' or 'I'm thinking about it.'"

We question the accuracy of Carapeli's unsupported sociological premise. But even if we accept the truth of that premise for the sole purpose of analyzing Carapeli's argument, the requested instruction was unnecessary.

Notwithstanding the victim's unequivocal testimony on the events leading up to Carapeli's precipitous and self-motivated attack, the jury was told that they were required to give Carapeli the benefit of the doubt and acquit him of the charges if from all the evidence they had a reasonable doubt whether he reasonably and in good faith believed H. voluntarily consented to or would consent to the touching. Thus even though Carapeli did not testify and the categorical testimony of the victim did not suggest she had any romantic inclinations, the jury was given the opportunity to apply Carapeli's chauvinistic assumption. In other words, if the jury decided H.'s conduct caused Carapeli to reasonably believe she consented or would consent to the intimate touching, the jury could find him not guilty. The definition of consent in CALJIC No. 1.23.1 added nothing to these instructions. The court correctly reasoned that although some words such as "malice" differ in their legal meanings from their "plain old English" meaning, the word "consent" meant the same thing in either its legal or simple English meaning: "Consent means consent. Yes means yes. No means no."

The typical dictionary definition of "consent" is "To give assent; . . . agree. To . . . be of the same mind. Voluntary acceptance or allowance of what is planned or done by another; permission. Agreement as to opinion or a course of action." (American Heritage Dict. (New Coll. ed. 1982) p. 283.) Here it is arguable the definition contained in CALJIC No. 1.23.1 would have required the jury to believe H. cooperated in act or attitude with the knowledge of the nature of the act involved. Seen in this light, Carapeli may

have benefited from the accepted meaning of "consent." The court did not err in refusing to give CALJIC 1.23.1.

## B

■ Carapeli next asserts that the court prejudicially erred in refusing his requested special instruction No. "D" which states: "Distinction between intent to commit rape and intent to seduce: The law does create a distinction between an intent to commit rape and lewd and indecent acts with the intent to seduce. In order to convict the defendant of Counts I or II, you must find beyond a reasonable doubt that the defendant's actions constituted an intent to commit rape rather than an intent to seduce. It is the burden of the prosecution to prove intent to commit rape beyond a reasonable doubt and not the defendant's burden to prove any other intent."

A court may refuse to give a requested instruction when the principles of law contained in that instruction are covered by other instructions. (*People v. Tedesco* (1934) 1 Cal.2d 211, 220 [34 P.2d 467].)

In this case the court instructed on assault with intent to commit rape, telling the jury that it must find beyond a reasonable doubt that ". . . a female person was assaulted, and . . . [t]hat such assault was made with the specific intent to commit rape."

The court also defined the crimes of rape and sexual battery explaining the requisite specific intent associated with each crime. The court defined the crime of rape "not because [Carapeli was] charged with rape but because the word 'rape' is in the definition of the assault to commit rape." And as noted earlier the court also instructed on the defense of Carapeli's reasonable good faith belief if the victim had consented or would consent.

These instructions told the jury all the essential elements of the offenses including the necessary intent required for the defendant to be found guilty of those crimes. Although the requested instruction may have added an interesting academic aspect to the case, it did not contain any essential information not provided in the instructions which were given. Carapeli's claim the court's failure to give such an instruction deprived the jury from considering all the material issues is meritless.

## C

The last instructional issue concerns the relationship among the various offenses considered by the jury: the greater offense of assault with the intent to commit rape charged in count one, the lesser related offense of sexual

battery charged in count two (see *People* v. *Geiger* (1984) 35 Cal.3d 510 [199 Cal.Rptr. 45, 674 P.2d 1303, 50 A.L.R.4th 1055]), and the lesser included offense of simple assault. ■ The court correctly instructed the jury that simple assault is a lesser included offense of both assault with the intent to commit rape and sexual battery by restraint.[3] During its deliberations the jury asked: "Is it possible to find the defendant guilty on count II, sexual battery, not guilty on count I, which is assault with intent to commit rape, and guilty of the LIO assault?"

The court responded: "[Y]ou may find him guilty on count II. You may find him not guilty on count I and you may not find him guilty of the LIO assault because in order to find him guilty of the LIO assault you have to find him not guilty on both counts." ■ Carapeli asserts the court's response was erroneous because it deprived the jury of the opportunity to complete deliberations on count one, assault with intent to commit rape. He says that if the jury decided Carapeli lacked the intent to commit rape it should have been given the opportunity to find him not guilty of assault with intent to commit rape and then proceed to deliberate on the lesser included offense of simple assault before considering the sexual battery count. Carapeli argues the jury could find him not guilty of count one, guilty of the lesser included offense of simple assault, severally consider count two and find him guilty of sexual battery. Since both simple assault and sexual battery arise from a single act or indivisible course of conduct, section 654 would preclude double punishment. (*People* v. *Liakos* (1982) 133 Cal.App.3d 721, 724 [184 Cal.Rptr. 182].) While there is some logic in the approach Carapeli proposes, we conclude the court's response was proper.

Our courts have long held that multiple convictions are prohibited where one offense is necessarily included in another. (*People* v. *Pearson* (1986) 42 Cal.3d 351, 355 [228 Cal. Rptr. 509, 721 P.2d 595]; *People* v. *Greer* (1947) 30 Cal.2d 589, 604.) " 'If the evidence supports the verdict as to a greater offense, the conviction of that offense is controlling, and the conviction of the lesser offense must be reversed.' " (*People* v. *Pearson, supra,* 42 Cal.3d at p. 355, quoting *People* v. *Moran* (1970) 1 Cal.3d 755, 763 [83 Cal.Rptr. 411, 463 P.2d 763].) Had the jury here returned guilty verdicts on simple assault as a lesser included offense of count one and on sexual battery in count two,

---

[3] We initially questioned whether simple assault is a lesser included offense of sexual battery because section 240 defines assault as "an unlawful attempt, coupled with a present ability, *to commit a violent injury* on the person of another." (Italics supplied.) Sexual battery may be committed without violent injury. However, "violent injury" is held to include any wrongful act committed by means of physical force even though that force entails no pain or bodily harm. (*People* v. *Bradbury* (1907) 151 Cal. 675, 676 [91 P. 497]; *People* v. *Flummerfelt* (1957) 153 Cal.App.2d 104, 106 [313 P.2d 912].) We are therefore satisfied that simple assault is a lesser included offense of sexual battery.

it would have run afoul of *Pearson* and *Moran*. The trial court's challenged instruction avoided the possibility of the court having to strike the verdict on the lesser included offense.

In addition, by instructing the jury on the deliberation procedure suggested in *Stone* v. *Superior Court* (1982) 31 Cal.3d 503 [183 Cal.Rptr. 647, 646 P.2d 809],[4] the court avoided the potential double jeopardy problem which would have arisen if the jury had deadlocked on either count one or count two but had convicted Carapeli of the lesser included simple assault. The fact that sexual battery is a lesser related offense of assault with intent to commit rape does not permit a court to deviate from *Stone*. If, for example, the jury could not agree on count one, had acquitted Carapeli on count two and found him guilty of simple assault as a lesser included offense of count two, the guilty verdict on the lesser included offense would bar retrial on count one, since the finding on the lesser included offense implied acquittal on all greater offenses. (*Stone* v. *Superior Court, supra,* 31 Cal.3d at p. 511.) The court gave CALJIC No. 17.10 (1984 rev.) the "acquittal first" instruction before deliberations began. The court's response to the jury question clarified the earlier instruction. The teachings of *Stone* are more clearly reflected in CALJIC No. 17.12 (1984 rev.).

Here the court's approach did not present the jury with an all or nothing situation on count one because unlike the defendant in *People* v. *Geiger, supra,* 35 Cal.3d 510, Carapeli was charged in a second count with sexual battery.

II*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

DISPOSITION

The judgment of conviction of sexual battery with restraint is affirmed. The judgment of conviction of assault with intent to commit rape is re-

---

[4]*Stone* holds the trial court is constitutionally obligated to afford the jury an opportunity to render a partial verdict of acquittal on the greater offense when the jury is deadlocked only on the uncharged lesser included offense and suggests the following procedural approach:

"When a trial judge has instructed a jury on a charged offense and on an uncharged lesser included offense, one appropriate course of action would be to provide the jury with forms for a verdict of guilty or not guilty as to each offense. The jury must be cautioned, of course, that it should first decide whether the defendant is guilty of the greater offense before considering the lesser offense, and that if it finds the defendant guilty of the greater offense, or if it is unable to agree on that offense, it should not return a verdict on the lesser offense." (*Id.* at p. 519.)

*See footnote 1, *ante,* page 589.

versed and the court instructed to conduct a rehearing on Carapeli's motion for new trial as to that count. If, after applying the proper standard for evaluating the evidence on the new trial motion, the court denies the motion, the judgment of conviction shall be reinstated. If Carapeli's motion is granted and the People elect not to retry Carapeli on charges of assault with intent to commit rape, the sentence on the sexual battery by restraint is vacated to permit resentencing on that count.

Work, J., and Todd, J., concurred.