Filed 3/12/13  P. v. Cardona CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D060469 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 227952) |
| ARTURO CARDONA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Yvonne E. Campos, Judge.  Affirmed.

A jury convicted Arturo Cardona of one count of cultivating marijuana (Health & Saf. Code,[1] § 11358).  The jury deadlocked on one count of possessing marijuana for the purpose of sale (§ 11359) and the court declared a mistrial on that count.  The court

---

[1]    All further statutory references are to the Health and Safety Code unless otherwise indicated.

sentenced Cardona to 180 days in the custody of the Sheriff and three-years felony probation.

Cardona appeals, contending the court erred in denying the demurrer prior to arraignment. Additionally, Cardona contends the court erred in denying his Penal Code section 995 motion when the prosecution failed to meet their burden at the preliminary hearing. Cardona also contends the court erred in denying his request for judicial notice of evidence and his request for a jury instruction on section 11362.775. Finally, Cardona contends the prosecution's expert witnesses were unqualified and the court erred in allowing the prosecution's experts to render expert opinions on the Compassionate Use Act of 1996 (§ 11362.5; hereafter CUA).

## FACTUAL AND PROCEDURAL BACKGROUND

On June 14, 2010, Agent Kevin Sharpe of the federal Drug Enforcement Administration (DEA) executed a search warrant at 4977 Southcrest Avenue in San Diego. Cardona lived at the residence with his brother, Christian Cardona. DEA agents had surveillance on the residence for approximately two months, watching Christian Cardona and his girlfriend going in and out of the house. Both Christian Cardona and his girlfriend had sold cocaine to undercover agents.[2] There were no controlled buys involving Cardona.

---

[2] Cardona's brother, Christian Cardona, and his girlfriend, Sandy Karina Mercado, pleaded guilty to possessing controlled substances for sale (§ 11351) and were granted felony probation.

During the search, agents found seven marijuana plants hanging to dry inside a closet near the front door. A large digital gram scale and a food sealer were found on the kitchen counter. Plastic and glass jars containing various amounts of marijuana were found in the upper kitchen cabinets. In the low kitchen cabinets, agents found glass containers with marijuana residue.

In the detached garage, a marijuana grow occupied more than one third of the structure. Silver metallic sheeting surrounded the marijuana plants. Three fluorescent lights and three high intensity grow lights hung directly above 22 marijuana plants of various sizes. Most of the marijuana plants were three to four feet tall. In Cardona's bedroom, agents found a glass bong, pay-owe sheets on white index cards totaling almost $19,000, and $3,833 in cash. The loose marijuana found in the kitchen and living room totaled 244 grams.

Agent Sharpe opined that if an individual was growing more than 20 marijuana plants, had 244 grams of loose marijuana, had more than $3,000 in cash, and possessed pay-owe sheets showing quantities, amounts, and types of marijuana, the individual possessed the marijuana for the purpose of sale.

San Diego Police Detective Mark Carlson of the Integrated Narcotic Task Force reviewed the evidence collected and spoke with Agent Sharpe. Detective Carlson detailed his training, experience, and involvement in hundreds of investigations and arrests involving narcotics and marijuana. Detective Carlson also testified about his training and experience regarding medical marijuana, medical marijuana recommendations, and his familiarity with the applicable California state law.

3

Detective Carlson opined that, hypothetically, 22 marijuana plants, plus 244 grams of buds, and 21 pay-owe sheets totaling almost $19,000, the marijuana was being cultivated and possessed for the purpose of sales. Detective Carlson testified the pay-owe sheets included at least 20 customers with names, prices, and quantities. In his review of the evidence, Detective Carlson had not seen any documentation that any of the customers had a current medical marijuana recommendation. Based on his training and experience, Detective Carlson testified he had been in places where people collectively grew marijuana and they usually posted copies of physician recommendations in the cultivation area.

Juan Romero Valencia testified that he was a member of Cardona's medical marijuana collective. Valencia had a metal rod and screws placed in his leg after he fractured a femur during a rollover truck crash in October 2005. As a result, Valencia experienced pain but he did not take medication because he did not have medical insurance. In the five years Valencia had been using marijuana, he obtained some from dispensaries but it was of poor quality. Valencia had also received marijuana from street dealers that he found to be of higher quality than the dispensaries. Valencia testified that the higher grade marijuana completely alleviated his leg pain so he could work and walk normally.

Valencia received some of Cardona's high quality marijuana from his "small harvest." Valencia testified that Cardona told him he could grow marijuana for Valencia legally if Valencia got a medical card. Valencia stated he told Cardona he did not know how a collective worked and that he did not have the skill to grow marijuana himself.

4

Cardona asked Valencia to donate some money to buy more equipment for his "collective." Valencia gave him "around 500, a thousand bucks." Valencia obtained a physician's recommendation for marijuana use in March 2010. Valencia testified that he did not live with Cardona and Cardona had never taken him to any doctor's appointments.

Cardona testified that he was a medical marijuana patient. He used marijuana because he suffered from anxiety, insomnia, and appetite problems. Before growing his own marijuana, Cardona researched the legal implications of medical marijuana on the Internet. Based on his Internet research, he believed he could legally grow marijuana under California state law.

After the success of his first marijuana grow, Cardona knew of other medical marijuana patients and decided to form a small collective. If the members of the collective agreed to contribute funds to subsidize the equipment and electricity costs, he would grow and supply each member with marijuana. Cardona testified that the collective initially began with four people: Valencia, Mary Eggers, Matt, and Cardona himself. Cardona did not keep any business records except for some "business ledgers" on white index cards. Cardona's physician recommendation had expired on June 4, 2010 and, therefore, not valid on June 14, 2010 when he was arrested.

## DISCUSSION

### I

### *DEMURRER*

Cardona contends the court erred in denying his demurrer prior to arraignment because he had immunity from prosecution under the CUA and section 11362.775.

Cardona argues his medical marijuana recommendation demonstrated that the court had no jurisdiction over the offense charged under Penal Code section 1004, subdivision (1). Additionally, Cardona contends his medical marijuana recommendation constituted "a legal justification or excuse of the offense charged or other legal bar to the prosecution" under Penal Code section 1004, subdivision (5). We disagree.

"A demurrer to a criminal complaint lies only to challenge the sufficiency of the pleading and raises only issues of law." (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1090.) Penal Code section 1004 specifically "limits demurrers to defects appearing on the face of the accusatory pleading." (*Tobe, supra,* at p. 1090.) A demurrer is not a proper means to test the sufficiency of evidence. (*People v. Williams* (1979) 97 Cal.App.3d 382, 391.)

Here, Cardona's contention is without merit because the demurrer was based on an affirmative defense. The CUA's grant of limited immunity is an affirmative defense, which may be asserted during trial or prior to trial under Penal Code section 995. (See *People v. Mower* (2002) 28 Cal.4th 457, 473.) Thus, since Cardona's demurrer was based on an affirmative defense and not as a challenge to the facial defects of the criminal complaint, the court did not err in denying Cardona's demurrer prior to arraignment.

II

*PRELIMINARY HEARING AND PENAL CODE SECTION 995 MOTION*

Cardona contends the trial court erred in denying his Penal Code section 995 motion because the prosecution did not meet their burden at the preliminary hearing. We disagree.

6

Penal Code section 999a governs the procedural remedy for a criminal defendant if the trial court denies his Penal Code section 995 motion.  The defendant must file a petition for writ of prohibition predicated on the ground the trial court abused its discretion.  Penal Code section 999a provides, in part:

> "*A petition for a writ of prohibition, predicated upon the ground* that the indictment was found without reasonable or probable cause or that the defendant had been committed on an information without reasonable or probable cause, or *that the court abused its discretion in utilizing the procedure set out in subdivision (b) of Section 995a, must be filed in the appellate court within 15 days after a motion made under Section 995 to set aside the indictment* on the ground that the defendant has been indicted without reasonable or probable cause or that the defendant had been committed on an information without reasonable or probable cause, *has been denied by the trial court*."  (Italics added.)

Here, Cardona failed to file a writ of prohibition after his Penal Code section 995 motion was denied. We conclude the proper vehicle for raising Cardona's claim was a pretrial petition for writ of prohibition, and his claims are not cognizable on appeal because he failed to file such a petition.

III

*JUDICIAL NOTICE OF EVIDENCE*

Cardona contends the trial court erred in denying his request for judicial notice of evidence.  We disagree.

An appellant must present legal argument and authority on each point raised in his briefing.  "'[E]very brief should contain a legal argument with citation of authorities on the points made.  If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.'"  (*People v. Stanley* (1995) 10 Cal.4th 764,

7

793.) "An appellate court is not required to examine undeveloped claims, nor to make arguments for parties." (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.) We do not "act as counsel for appellant by furnishing a legal argument as to how the trial court's ruling was prejudicial." (*Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963.) Prejudice is not presumed and, thus, "the burden is on the appealing party to demonstrate that a miscarriage of justice has occurred." (*Waller v. TJD, Inc.* (1993) 12 Cal.App.4th 830, 833.) Conclusory arguments based on appellant's opinion, without citation to recognized legal authority, will be disregarded on appeal. (*Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979.)

Here, Cardona's brief provides us no authority to support his conclusory statements that the evidence of Cardona's research prior to starting the marijuana collective was relevant. Additionally, Cardona does not provide us with any explanation as to how Cardona was prejudiced by the court denying his request for judicial notice of such evidence. Consequently, without any analysis or supporting authority provided in Cardona's brief, we deem this issue waived on appeal.

IV

*JURY INSTRUCTION*

Cardona contends the court erred in denying his request for a jury instruction on section 11362.775. We disagree.

Cardona's request did not provide the court with a specific instruction but rather asked the court to simply read the statutory language of section 11362.775 to the jury. However, such instruction constituted a "pinpoint instruction" as it related particular facts

8

to a legal issue to pinpoint a potential defense theory. A court may properly refuse a requested instruction if the subject of the instruction is covered by other instructions. (*People v. Carapeli* (1988) 201 Cal.App.3d 589, 594.)

Here, the court denied the request for the "pinpoint" instruction but the court generally instructed on the CUA and lawful uses of marijuana for medical purposes using the language set forth in CALCRIM No. 2370. CALCRIM No. 2370 is recognized as accurately addressing the CUA and the lawful uses of marijuana for medical purposes. (See *People v. Kelly* (2010) 47 Cal.4th 1008, 1021 & fn. 14.) Cardona's contention that the affirmative defense was only given for "caregivers" and not for "patient associations" is misguided. CALCRIM No. 2370 provides, in part:

> "Possession or cultivation of marijuana is lawful if authorized by the [CUA]. The [CUA] allows a person to possess or cultivate marijuana for personal medical purposes or as the primary caregiver of a patient with a medical need when a physician has recommended such use. [¶] The amount of marijuana possessed or cultivated must be reasonably related to the patient's current medical needs. The People have the burden of proving beyond a reasonable doubt that the defendant was not authorized to possess or cultivate marijuana for medical purposes."

Therefore, we conclude that Cardona's request for a pinpoint instruction on section 11362.775 was sufficiently covered by the CALCRIM No. 2370 instruction.

However, for the sake of argument, even if the court should have given a pinpoint instruction on section 11362.775, any error was harmless. Our review of the record indicates no real evidence was presented to indicate Cardona operated a lawful marijuana grow in exchange for donations as opposed to an unlawful marijuana grow in exchange for profit so that a pinpoint instruction on section 11362.775 would lead to a different

9

result. The jury was faced with a simple choice between Cardona's theory that he was authorized to cultivate and possess marijuana for medical purposes or the prosecution's theory that his cultivation and possession was for the purpose of sales. The jury had ample evidence to reject Cardona's affirmative defense. Namely, the prosecution presented evidence of several pay-owe sheets totaling $18,955. Therefore, if the court did err in failing to give a pinpoint instruction, the error was harmless.

V

*PROSECUTION EXPERTS*

Cardona contends the court erred in admitting testimony from Detective Mark Carlson and Agent Kevin Sharpe because they were not qualified to render an expert opinion on the CUA since they could not testify about the differences between legal and illegal marijuana possession and cultivation. We disagree.

We may reverse a court's ruling on an expert's qualifications only if the evidence shows the witness clearly lacks qualification as an expert. (*People v. Robinson* (2005) 37 Cal.4th 592, 632.) We review the admission of expert testimony, and rulings on an expert's qualifications, for abuse of discretion. (*People v. Harvey* (1991) 233 Cal.App.3d 1206, 1227-1228.) " 'A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates.' " (*People v. Catlin* (2001) 26 Cal.4th 81, 131, quoting Evid. Code, § 720, subd. (a).) Expert opinion testimony is admissible when it "will assist the jury to understand the evidence or a concept beyond common experience . . . [and] is not admissible if it consists of inferences and conclusions which

10

can be drawn as easily and intelligently by the trier of fact as by the witness." (*People v. Torres* (1995) 33 Cal.App.4th 37, 45.)

Cardona's reliance on *People v. Chakos* (2007) 158 Cal.App.4th 357 (*Chakos*) for the contention that Detective Carlson and Agent Sharpe did not have the experience required to render an expert opinion on the CUA is misplaced. In *Chakos*, a deputy sheriff testified at trial that marijuana possessed by an individual with a prescription for medical marijuana was possessed for sale. (*Id.* at pp. 361-362.) However, the officer admitted he had no knowledge of the CUA and had never before arrested an individual who was a qualified medical marijuana patient. (*Id.* at p. 362.) The Court of Appeal held he did not qualify to testify at trial as an expert on the subject and reversed the defendant's conviction. (*Id.* at pp. 365, 367-368.)

Here, Detective Carlson was qualified to give an expert opinion on medical marijuana in California and the patterns of lawful possession for medical use as opposed to unlawful use. Carlson has over 28 years of law enforcement experience with years of training and experience investigating narcotics and marijuana cases. Unlike in *Chakos, supra,* 158 Cal.App.4th 357, Carlson had special training and knowledge of applicable state and federal law regarding medical marijuana. Furthermore, unlike in *Chakos*, Carlson participated in "well over 30 search warrants involving medical marijuana issues."

Detective Carlson's testimony demonstrated his knowledge and familiarity of the relevant law:

11

"But in the sense of for state law purposes, medical marijuana, it's the same as growing any marijuana. It just comes down to what is that marijuana is going to be used for. Is it going to be used for a qualified person that has a qualified recommendation from a physician to have or to grow or possess amounts that are consistent with their need medically, not their need for recreation or other purposes, but their medical need. So we look at things like -- in a cultivation case, how much are they growing? Are they growing realistic amounts for their need? If they're a qualified caretaker, which occurs in California law, in some cases they can be qualified to assist someone else in that endeavor. Are they growing the amount consistent with what that person would need for their medical use? [¶] So we get information from the persons involved, if possible. We look at records to see what they're doing. It may be records that break down how much their need is. It could be recommendations that break down how much their need is. It could be indications of how they've collectively or cooperatively worked to grow marijuana. [¶] Also, there's records that can show that this isn't a legal, under California law, possession or cultivation, such as pay and owe records showing that they're distributing marijuana for money. There is no provision for distributing for payment. There's parts of the law where a caregiver who is a qualified caregiver and part of their duties are providing marijuana for the patient."

Detective Carlson then continued to testify regarding his experiences where he, in an effort to comply with the medical marijuana laws, had walked away and left marijuana with people on three occasions who appeared to be in compliance with the guidelines. The record shows Carlson is more familiar than the average layperson with the patterns and distinctions between legal and illegal marijuana possession and cultivation under applicable medical marijuana laws and the CUA. Therefore, we conclude the court did not abuse its discretion in ruling Carlson a qualified expert witness and admitting his testimony.

In regard to Agent Kevin Sharpe of the DEA, we also find Sharpe qualified to render an expert opinion on the CUA. Sharpe testified he has completed the federal DEA

12

academy for training in all aspects of narcotic investigations. Sharpe was also cross-sworn as a peace officer in California. He also stated he has served as a case agent or been otherwise involved in over 200 cases and 250 arrests in which he worked directly with San Diego Police Department or the San Diego County Sheriff. Sharpe also completed the 80-hour California Narcotics Association courses.

In addition to his training, Agent Sharpe's explanation of his knowledge of the applicable federal and state laws regarding medicinal use of marijuana indicates how his background and training qualified him to render an expert opinion on the CUA. Sharpe indicated he had been to dispensaries and factors he has used in his experience to determine whether the amount of marijuana is being possessed or cultivated legally or illegally. Sharpe testified regarding the presence of pay-owe sheets, large amounts of currency, and amounts of marijuana found in relation to the individual's medical needs. Based on Sharpe's testimony, we find that he had experience above and beyond an average layperson more familiar than the average layperson with the patterns and distinctions between legal and illegal marijuana possession and cultivation under federal and state laws such that his expert opinion testimony is admissible. Therefore, the court did not err in finding Sharpe a qualified expert witness and admitting his testimony.

DISPOSITION

The judgment is affirmed.


                                                                HUFFMAN, J.

WE CONCUR:


        McCONNELL, P. J.


        McDONALD, J.