Filed 1/29/15  P. v. Valdovinos CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039339 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1120585) |
| v. | |
| JOEL MENDOZA VALDOVINOS, | |
| Defendant and Appellant. | |

### STATEMENT OF THE CASE

An information charged defendant Joel Mendoza Valdovinos with one count of forcible lewd conduct on a child under the age of 14 (Pen. Code, § 288, subd. (b)(1); count 1), one count of assault with intent to commit lewd conduct on a child under the age of 14 (Pen. Code, §§ 220, subd. (a), 288, subd. (a); count 2), one count of sexual battery (Pen. Code, § 243.4, subd. (a); count 3), and four counts of forcible rape (Pen. Code § 261, subd. (a)(2); counts 4, 5, 6, and 7).  Liliana Doe was the alleged victim in count 1, V. Doe was the alleged victim in counts 2 and 3, and A. Doe was the alleged victim in counts 4 to 7.  For each count, the information alleged a multiple-victim enhancement (Pen. Code, § 667.61, subds. (b), (c) & (e)).

A jury convicted defendant on counts 1, 2, 4, 5, 6, and 7.  As to each count, the jury found the multiple-victim allegation to be true.  The jury was unable to reach a

verdict on count 3, and the trial court declared a mistrial on that count. The trial court sentenced defendant to a prison term of 75 years to life consecutive to four years.

Defendant now appeals from the judgment of conviction. On appeal, defendant makes the following arguments: 1) the trial court erred in ruling that evidence was cross-admissible under Evidence Code section 1108; 2) the trial court erred in refusing to sever counts 1, 2, and 3 from counts 4, 5, 6, and 7; 3) joinder of all the counts rendered defendant's trial fundamentally unfair and resulted in a due process violation; and 4) count 2 must be reversed due to insufficient evidence that the victim was under the age of 14.

As set forth below, we conclude that the trial court did not err in issuing its rulings regarding cross-admissibility and severance, and we further conclude that defendant did not suffer a due process violation. Given that there was no evidence that the victim was under the age of 14, we conclude that defendant's conviction for assault with intent to commit lewd conduct on a child under the age of 14 must be reduced to simple assault. We accordingly will modify the judgment to reduce the conviction in count 2 to simple assault, remand the matter to the trial court for resentencing on that count, and affirm the judgment in all other respects.

STATEMENT OF THE FACTS

*The Victims, Witnesses, and Defendant*

A. Doe[1] began dating defendant in 2004, and they lived together off and on between 2004 and 2009. Defendant was the father of A.'s two children, a son born in 2005 and a daughter born in 2007. Although A. and defendant never married, A. considered defendant to be her husband.

---

[1] At trial, all of the victims and many of the witnesses were referred to by the surname Doe. This opinion will use first names when discussing those individuals.

2

Between December 2006 and December 2008, A.'s mother, E. Doe, lived in an apartment complex in San Jose. A.'s younger sisters, V. Doe and Mariela Doe, lived with E. E. testified that defendant was "like" A.'s husband, and Mariela testified that she "thought of [defendant] like family." Defendant sometimes visited the apartment where E., V., and Mariela lived.

Between December 2006 and December 2008, Adriana Doe lived in the same apartment complex as E. Adriana's two children, Liliana Doe and Eduardo Doe, lived with Adriana. Liliana and Eduardo had seen defendant at their apartment complex, and they knew that defendant was part of E.'s family.

### Counts 1, 2, and 3

One day between December 2006 and December 2008, Adriana asked E. to babysit Liliana and Eduardo, and Adriana left Liliana and Eduardo at E.'s apartment. V. and Mariela were present at the apartment. E. left the apartment, and she placed V. in charge of the three other children. At that time, V. was 14 or 15 years old, Liliana was seven or eight years old, Eduardo was approximately five years old, and Mariela was four or five years old.

While the children were playing or watching television, defendant entered the apartment. Defendant picked Liliana up and dropped her onto the bed in E.'s bedroom. He got on top of Liliana, and he pinned her hands down with one of his own hands. Defendant touched Liliana's breasts under her clothes. He also touched Liliana's vaginal area.[2] He did not insert anything into Liliana's vagina. Liliana told defendant to stop touching her, and she screamed for help. Mariela and V. laughed while defendant was on top of Liliana, and it appeared to Eduardo that Mariela and V. believed that defendant

---

[2] Liliana could not remember if defendant touched her vaginal area over or under her clothes.

3

was just playing with Liliana.  Defendant eventually let go of Liliana, and she hid in the bathroom.

At another point while defendant was in the apartment, he dragged V. into the bedroom.  He put V. on the bed and got on top of her.  He grabbed her arms and held her down.  He told V. that he liked her, and he kissed her on her mouth.  V. told defendant to stop, and she turned her head.  Eduardo saw defendant "humping" V.  V. testified that defendant never touched her breasts or "private area."

At some point, the children locked themselves inside the apartment's bathroom.  Defendant slid a knife blade under the bathroom door, and he told the children to come out.  Defendant said he was the "person who cuts off people's ears."  When defendant became silent, Mariela exited the bathroom.  Defendant chased Mariela.  Mariela fell down and cut her ear on a mirror or a fish tank.  Defendant then left the apartment.

When Liliana returned to her family's apartment, she told her mother that defendant had touched her breasts and vagina.  A week later, Liliana told her father that defendant had touched her breasts.  Her parents did not contact the police.  In 2010, Liliana told a school counselor that she had been sexually assaulted, and the counselor contacted the police.

### Counts, 4, 5, 6, and 7

Shortly after A. gave birth to her son in 2005, she and defendant got into an argument.  When the argument ended, defendant told A. that he wanted to have sex with her, and he told her that it was her "obligation" to have sex with him.  A. did not want to have sex with defendant.  Defendant climbed on top of her and took her clothes off.  A. tried to push defendant off of her, and she said, "No."  Defendant held down A.'s arms, and he overpowered her.  Defendant had sex with A.  She cried and told him to stop.  Defendant said that she was his wife, and that she was supposed to have sex with him.

4

Sometime around Mother's Day 2008, A. entered her bathroom in order to take a shower. She began undressing, and defendant pushed the bathroom door open. Defendant was paranoid and appeared to be high on drugs. He accused A. of being in the bathroom with a man. A. said that nobody was in the bathroom with her. She wrapped herself in a towel and exited the bathroom. Defendant called A. a bitch and accused her of "fucking someone in the bathroom." He told her, "I want to smell you." Defendant threw A. onto their bed, and he pulled the towel off of her. He pulled off her pants and underwear, pinned down her hands, and spread her legs. He wiped her vagina with a piece of paper and said, "I'm going to take this down to a lab." He said that the lab would confirm that A. was a bitch who had been "fucking someone else." A. cried, and she felt humiliated. Defendant forced A. to have sex with him. She did not want to have sex with defendant, and she tried to push him away. She screamed. Defendant put his hand over her mouth, called her a bitch, and told her that she "liked it." A. stopped screaming when her son pounded on the bedroom door.

Approximately one month later, A. was sleeping in her bed. Her two children were "right next to" her in the bed. A. woke up, and she saw defendant looking at her. Defendant told her that he wanted to have sex. A. said, "No." Defendant pulled off A.'s nightclothes and underwear. He forced her legs open and forced her to have sex. A. "started fighting back," and she tried to push defendant off of her. She eventually stopped fighting back because she did not want her children, who were still next to her in the bed, to wake up and see what was happening. A. cried. Defendant called her a bitch, and he told her that she "liked it." When defendant finished having sex with A., she cried for half an hour.

Sometime in October or November 2009, A. was putting her children to sleep in the bedroom. Defendant entered the room, and he started "getting physical" with A. He wanted to have sex with her, and he pulled off her pajamas and underwear. A. "couldn't

5

take it anymore." She wrapped herself in a towel and tried to run out of the house. Defendant ran toward her and grabbed her hair. He grabbed her chin and "cracked" her neck to one side. A. fought to open the house's front door. Defendant then "cracked" her neck to the other side, and A. lost consciousness for about one minute. When she regained consciousness, she told defendant to leave. Defendant spread her legs and forced her to have sex on the floor. A. told him to stop, and she tried to push him away. She eventually stopped resisting because she thought it would be over faster if she stopped fighting back.

In 2010, A. learned that the police were investigating an incident involving defendant, V., and Liliana. After learning of that investigation, A. contacted the police and reported that defendant had sexually assaulted her. She never told her family about the sexual assaults because she felt embarrassed and humiliated.

### Defense Evidence

On November 2, 2009, San Jose Police Officer Terry Foster interviewed A. She explained that defendant had physically assaulted her. Officer Foster saw that A. had bruises. A. never told Officer Foster that defendant had sexually assaulted her.

## DISCUSSION

### I. *EVIDENCE CODE SECTION 1108*

Defendant contends that the trial court erred in ruling, pursuant to Evidence Code section 1108,[3] that the evidence regarding the molestation of Liliana and V. was cross-admissible propensity evidence that the jury could consider in reaching a verdict on the rape counts involving A. Specifically, defendant asserts that the ruling was erroneous because the molestation of Liliana and V. was "factually unlike" the rapes of A. He also emphasizes that the molestation evidence was "highly inflammatory" and would thus

---

[3] Subsequent unspecified statutory references are to the Evidence Code.

6

"make objective evaluation of the weaker rape allegations unlikely." As explained below, the trial court did not abuse its discretion in issuing its ruling pursuant to section 1108.

## A. Background

Before trial, defendant filed a motion arguing that "evidence pertaining to counts one through three and counts four through seven . . . should not be cross-admissible under [section] 1108." The prosecutor opposed defendant's motion. The prosecutor argued, "I am making a motion in limine that the court should allow an argument to the jury that because the defendant committed one or more of the crimes involving the children that they can consider that as propensity evidence for the adult rape and the reverse as well."

The trial court ruled that the evidence was cross-admissible: "The court is ruling under [section] 1108 that the evidence of alleged child molestation and the alleged spousal rape is cross-admissible." The court accordingly instructed the jury that if it found defendant guilty of any of the charged sex offenses, it could "conclude from that evidence that the defendant was disposed or inclined to commit another sexual offense . . . and . . . also conclude that the defendant was likely to commit that other sexual offense."

## B. The Trial Court Did Not Abuse its Discretion

Section 1108 is an exception to section 1101's general prohibition against admitting character evidence to prove criminal disposition or propensity. (See § 1101, subd. (a); *People v. Jandres* (2014) 226 Cal.App.4th 340, 352 (*Jandres*).) Section 1108 states, in pertinent part: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." (§ 1108, subd. (a).) Section 1108 "extends to evidence of both charged and uncharged sex offenses." (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1162,

7

italics omitted.)  We review a trial court's ruling under section 1108 for abuse of discretion.  (*People v. Loy* (2011) 52 Cal.4th 46, 61.)

Here, defendant does not dispute that the charged offenses were "sexual offenses" within the meaning of section 1108.  Instead, defendant contends that cross-admissibility was barred by section 352.

Section 352 states:  "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  "A court deciding whether evidence of one or more sexual offenses meeting the definitional requirements of . . . section 1108 should nonetheless be excluded pursuant to . . . section 352 undertakes a careful and specialized inquiry to determine whether the danger of undue prejudice from the propensity evidence substantially outweighs its probative value.  Specifically, the court weighs factors such as the 'nature, relevance, and possible remoteness [of the evidence], the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses . . . .' [Citation.]."  (*People v. Merriman* (2014) 60 Cal.4th 1, 41 (*Merriman*).)  Applying the preceding factors, we evaluate defendant's arguments and conclude that cross-admissibility was not barred by section 352.

Contrary to defendant's assertion, the charged offenses were factually similar. Each of the charged offenses involved force and violence against a female victim known to the defendant.  In each charged offense, defendant pinned the victim down and overpowered her in order to accomplish a sexual act.  For each charged offense,

8

defendant gained access to the victim because he was part of A.'s family.  As the trial court noted in issuing its ruling, all of the charged offenses were "sexual acts of opportunity within a family unit rather than a predator finding stranger victims."  Given these factual similarities, defendant's molestation of Liliana and V. tended to show that defendant was predisposed to commit the rapes of A.  (*People v. Jandres* (2014) 226 Cal.App.4th 340, 355-356 (*Jandres*) [an uncharged sex offense shows a predisposition to commit a charged sex offense if the two offenses are similar].)  Accordingly, the molestation evidence was probative and relevant to the jury's inquiry into the rape charges.  (See *id.* at p. 355 [evidence of uncharged sexual conduct is probative if "the uncharged conduct is similar enough to the charged behavior to tend to show defendant did in fact commit the charged offense"].)

The probative value of the molestation evidence was not substantially outweighed by the danger of undue prejudice.  We are not persuaded by defendant's contention that the molestation of Liliana and V. was more inflammatory than the counts involving A.  Although Liliana and V. were minors, we are not convinced that defendant's conduct toward them was more egregious than his conduct toward A.  The evidence showed that defendant pulled off A.'s clothes and forcibly raped her in the presence of their children.  On one occasion he "cracked" her neck so violently that she lost consciousness.  During the rapes, defendant called A. a bitch and made other statements designed to humiliate her.  In contrast, there was no vaginal penetration during the incident involving Liliana and V., there was no evidence that defendant removed either girl's clothing, and defendant never made statements designed to humiliate the girls.  Although defendant pinned down Liliana and V., he never utilized the type of great force he used in knocking A. unconscious.  Indeed, Mariela and V. laughed while they watched defendant touch Liliana, a circumstance suggesting that defendant did not use substantial force against Liliana.  We therefore cannot conclude that the evidence of the molestation of Liliana and

9

V. was unduly inflammatory and thus likely to distract or mislead the jurors in their inquiry regarding the rape allegations involving A.

We further note that the evidence pertaining to the molestation of Liliana and V. cannot be categorized as stronger than the evidence pertaining to the rapes of A. (*Jandres, supra,* 226 Cal.App.4th at p. 356 [the "relative strength of the two cases also is relevant to assessing the potentially prejudicial impact" of evidence of uncharged sexual conduct].) There were many inconsistencies in the children's trial testimony regarding the molestation charges: Liliana testified that defendant touched her breasts and vaginal area; Mariela testified that defendant did not touch Liliana's breasts or vaginal area; Eduardo testified that defendant touched Liliana's breasts only; Mariela and V. testified that Eduardo was not present at the apartment when defendant molested Liliana and V.; the children provided differing testimony regarding the locations at which defendant molested Liliana and V.; the children disagreed as to which of them were inside the locked bathroom when defendant slipped the knife blade under the bathroom door; and the children disagreed regarding the order in which the events inside the apartment occurred. In contrast, A.'s trial testimony regarding the rapes was detailed and generally consistent. The circumstance that the jury failed to reach a verdict on one of the counts relating to V. suggests that the evidence pertaining to the molestation charges was not materially stronger than the evidence pertaining to the rape charges. We therefore are not persuaded by defendant's assertion that the strength of the molestation evidence prejudiced the jury in its inquiry into the rape charges.

We finally note that the molestation of Liliana and V. occurred during the same time period as the rapes of A. All of charged offenses occurred between 2005 and 2009. Thus, the molestation of Liliana and V. was not too remote in time to lose its probative value. (See generally *People v. Nguyen* (2010) 184 Cal.App.4th 1096, 1117 ["whether

10

the uncharged conduct is remote or stale" is "particularly significant" in a section 1108 analysis].)

Accordingly, based on the foregoing factors, we conclude that the probative value of the molestation evidence was not substantially outweighed by the danger of undue prejudice. Section 352 therefore was not a bar to cross-admissibility, and we must conclude that the trial court did not abuse its discretion in issuing its ruling pursuant to section 1108.

## II. *SEVERANCE*

Defendant contends that the trial court abused its discretion in denying his motion to sever the counts involving Liliana and V. (counts 1, 2, and 3) from the counts involving A. (counts 4, 5, 6, and 7). In urging us to find error in the denial of the severance motion, he makes the same arguments as those he made regarding cross-admissibility under section 1108. Alternatively, defendant asserts that joinder of all the counts rendered his trial fundamentally unfair and resulted in a due process violation. As explained below, we find no abuse of discretion in the denial of the severance motion, and we find no due process violation.

### A. Background

Before trial, defendant moved to sever the counts involving Liliana and V. from the counts involving A. The prosecutor opposed severance. At the request of the parties, the trial court reviewed the preliminary hearing transcript before it ruled on the severance motion. The trial court denied the severance motion. In issuing it ruling, the trial court noted that there was cross-admissibility of evidence under section 1108, that a weak case had not been joined with a strong case, and that none of the charges was unusually likely to inflame the jury against defendant.

### B. The Trial Court Did Not Abuse its Discretion in Denying the Severance Motion

Penal Code section 954 provides, in relevant part: "An accusatory pleading may charge . . . two or more different offenses of the same class of crimes or offenses, under separate counts . . . . [T]he court in which a case is triable, in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately . . . ."

Here, defendant concedes that all of the charged offenses belonged to the same class of crimes, and that the statutory requirements for joinder were thus satisfied. Accordingly, "defendant can predicate error in denying the motion to sever only upon a clear showing of potential prejudice." (*People v. Bradford* (1997) 15 Cal.4th 1229, 1315.)

"When, as here, the statutory requirements for joinder are met, a defendant must make a clear showing of prejudice to establish that the trial court abused its discretion in denying the defendant's severance motion. [Citations.] In determining whether there was an abuse of discretion, we examine the record before the trial court at the time of its ruling. [Citation.] The factors to be considered are these: (1) the cross-admissibility of the evidence in separate trials; (2) whether some of the charges are likely to unusually inflame the jury against the defendant; (3) whether a weak case has been joined with a strong case or another weak case so that the total evidence may alter the outcome of some or all of the charges; and (4) whether one of the charges is a capital offense, or the joinder of the charges converts the matter into a capital case." (*People v. Mendoza* (2000) 24 Cal.4th 130, 160-161 (*Mendoza*).)

Defendant has failed to make a clear showing of prejudice. As discussed in part I.B., *ante*, there was cross-admissibility of evidence under section 1108. "[T]hat circumstance alone is sufficient to dispel any potential of prejudice arising from the joinder of these counts." (*Merriman, supra,* 60 Cal.4th at p. 42.) We note, however, that the three remaining factors also show that there was insufficient prejudice. As discussed

12

in section I.B., we are not persuaded by defendant's contention that the charges involving Liliana and V. were unusually inflammatory. The absence of unusually inflammatory charges was apparent when the trial court ruled on the severance motion. In ruling on the severance motion, the trial court specifically noted that, based on its review of the preliminary hearing transcript, none of the charged offenses was unusually likely to inflame the jury against defendant. As discussed in part I.B., *ante*, defendant has failed to show that a weak case was joined with a strong case. This circumstance was also apparent when the trial court ruled on the severance motion. In issuing its ruling on the severance motion, the trial court noted that the children's preliminary hearing testimony was "all over the board" and filled with "inconsistencies," that A.'s preliminary hearing testimony contained "both consistencies and inconsistencies," and that the molestation charges were "neither stronger nor weaker" than the rape charges. Finally, none of the charges against defendant was a capital offense, so joinder did not convert the matter into a capital case. Thus, based on the foregoing factors, we must conclude that the trial court did not abuse its discretion in denying defendant's severance motion.

In arguing that the trial court abused its discretion, defendant relies on *People v. Earle* (2009) 172 Cal.App.4th 372. Defendant's reliance on *Earle* is misplaced. In *Earle*, this court held that the trial court abused its discretion in denying the defendant's motion to sever an indecent exposure charge from a sexual assault charge. (*Id.* at pp. 378-379.) In reaching our holding, we explained that the "charges arose from entirely distinct and dissimilar incidents with no apparent historical connection to one another," and that the sexual assault charge "was considerably weaker" than the indecent exposure charge. (*Id.* at p. 378.) Here, as previously discussed, the charged offenses all involved sexual violence against females who were connected to a particular family unit. We have also already explained that a weak case was not joined with a strong case. Thus, unlike *Earle*, the charges against defendant were not dissimilar and unconnected, and no charge

13

against defendant was considerably weaker than another charge. *Earle* is therefore distinguishable, and *Earle* does not compel us to conclude that that the trial court abused its discretion in denying defendant's severance motion.

Finally, defendant cites *Coleman v. Superior Court* (1981) 116 Cal.App.3d 129 for the proposition that sex crimes against children are necessarily inflammatory, and that this circumstance alone required the trial court to sever the counts involving Liliana and V. from the counts involving A. Defendant's argument is unpersuasive. *Coleman* did not hold that sex crimes against children are inflammatory per se. Rather, *Coleman* noted that the charged crimes against children—which included rape and oral copulation—were highly inflammatory. (*Id.* at pp. 132, 138, 139.) *Coleman* also noted: "We do not purport to lay down any rule as to when a denial of a motion for severance constitutes an abuse of discretion. In the nature of things, such a determination can only be made on a case by case basis turning on the particular facts of the cases." (*Id.* at p. 139.) As previously discussed, we have analyzed the particular facts of defendant's case and concluded that the offenses against Liliana and V.—which involved neither vaginal penetration nor oral copulation—were not unusually inflammatory. *Coleman* therefore does not require us to conclude that the trial court abused its discretion in denying defendant's severance motion.

### C. Joinder Did Not Result in a Due Process Violation

"Even if a trial court's severance or joinder ruling is correct at the time it was made, a reviewing court must reverse the judgment if the 'defendant shows that joinder actually resulted in "gross unfairness" amounting to a denial of due process.' " (*Mendoza, supra,* 24 Cal.4th at p. 162.)

Here, defendant's due process argument is premised on the theory that A. fabricated the rape allegations. Specifically, defendant contends that the evidence at trial showed that A. "fabricated testimony in connection with this case." Defendant further

14

contends that the "inflammatory nature of the allegations involving [the] minors and the relative strength of that case . . . worked to improperly bolster A.'s rape allegations and rendered [the] trial fundamentally unfair."

Defendant's argument is unconvincing. He assumes that A. fabricated her testimony because she did not immediately report the rapes to her family and the police. We cannot conclude that A.'s delayed reporting established that she fabricated her testimony. At trial, A. explained that she did not immediately report the rapes because she felt embarrassed and humiliated. This testimony provided a reasonable explanation for her failure to immediately report. Indeed, it was the "exclusive province" of the jury to evaluate A.'s testimony and conclude that she was a credible witness. (*People v. Maury* (2003) 30 Cal.4th 342, 403.) Moreover, as we have previously explained, we are not persuaded by defendant's assertion that the child molestation evidence was stronger and more inflammatory than the rape evidence. We accordingly cannot conclude that defendant's trial involved fabricated rape allegations that were improperly bolstered by the molestation evidence. Defendant therefore has failed to show that joinder resulted in a due process violation.

### III. *SUFFICIENCY OF THE EVIDENCE*

Defendant contends that there was insufficient evidence to support his conviction for assault with intent to commit lewd conduct on a child under the age of 14 because there was no evidence that V. was under the age of 14 at the time of the offense. The People concede that there was no evidence that V. was under the age of 14, and they request that we reduce defendant's conviction to the lesser included offense of simple assault (Pen. Code, § 240). Defendant does not dispute that simple assault is a lesser

15

included offense of assault with intent to commit lewd conduct on a child under the age of 14. As explained below, we will reduce the conviction to simple assault.

The information charged defendant with assault in violation of Penal Code section 220, subdivision (a). That section prohibits assault "with intent to commit mayhem, rape, sodomy, oral copulation, or any violation of Section 264.1, 288, or 289." (Pen. Code, § 220, subd. (a)(1).) The information alleged that defendant committed the assault with the intent to violate Penal Code section 288, subdivision (a). Penal Code section 288, subdivision (a) prohibits lewd conduct upon "a child who is under the age of 14 years."

The evidence failed to establish that V. was under the age of 14. V. testified that she was 14 or 15 years old at the time of the offense. No one testified that V. was under the age of 14. Indeed, E. testified that V. was born on June 6, 1991. Given that the offense occurred sometime between December 2006 and December 2008, V. was at least 15 years old at the time of the offense. Thus, there was insufficient evidence that defendant intended to commit lewd conduct on a child under the age of 14, and defendant's conviction for assault with intent to commit lewd conduct on a child under the age of 14 cannot stand.

Penal Code section 1181 grants this court the power to reduce convictions that are not supported by sufficient evidence: "When the verdict or finding is contrary to law or evidence, but if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict, finding or judgment accordingly without granting or ordering a new trial, and this power shall extend to any court to which the cause may be appealed." (Pen. Code, § 1181, subd. (6).)

We have no reason to doubt that simple assault is a lesser included offense of assault with intent to commit lewd conduct on a child under the age of 14. (See *People v.*

16

*Elam* (2001) 91 Cal.App.4th 298, 308 ["Inasmuch as assault with intent to commit forcible oral copulation is merely a simple assault committed with the specific intent to force the victim to commit oral copulation [citation], simple assault is a lesser offense necessarily included in the greater offense."]; *People v. Carapeli* (1988) 201 Cal.App.3d 589, 595 [simple assault is a lesser included offense of assault with the intent to commit rape].)  Moreover, the evidence established that defendant committed simple assault:  he dragged V. to the bed, got on top of her, pinned her down, and kissed her against her will. (See Pen. Code, § 240 ["An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."]; *People v. Wright* (1996) 52 Cal.App.4th 203, 209, fn. omitted ["An assault consists of an attempt coupled with the present ability to inflict an 'injury' unlawfully on another; this 'injury' can be the least unwanted touching."].)  We therefore will exercise our power under Penal Code section 1181, and we will reduce defendant's conviction to simple assault.

### DISPOSITION

The judgment is modified to reduce the conviction in count 2 to simple assault (Pen. Code, § 240), and the matter is remanded for resentencing on that count.  In all other respects, the judgment is affirmed.

_____
RUSHING, P.J.

WE CONCUR:



_____
PREMO, J.




_____
MÁRQUEZ, J.